DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

JUNE TERM, 1915.

---

ANNIE E. HULLEY, RESPONDENT, v. HERMAN F. MOOS-
BRUGGER, APPELLANT.

Argued June 29, 1915—Decided November 15, 1915.

1. Although the findings of the Court of Common Pleas as to facts
   in workmen's compensation cases are conclusive on appeal, never-
   theless the law arising upon the ascertained facts is a question
   for the court reviewing the decision.
2. The findings of the judge of the Court of Common Pleas on
   questions of fact in workmen's compensation cases, if there be
   evidence to support them, are final, unless the judge has mis-
   directed himself in point of law.
3. The words, "arising out of and in the course of his employment,"
   in the Workmen's Compensation act (*Pamph. L.* 1911, *p.* 134),
   are conjunctive, and recovery can only be had under that act
   when the given injury arose not only "in the course of" but also
   "out of" the employment.
4. An employer is not charged with the duty to see that none of
   his employes assaults any other one of them, either willfully or
   sportively.
5. An employer is not liable under the Workmen's Compensation
   act (*Pamph. L.* 1911, *p.* 134), to make compensation for injury
   to an employe, which was the result of horse-play or sky-larking,

so called, whether the injured or deceased party instigated the occurrence or took no part in it, for, while an accident, happening in such circumstances, may arise in the course of, it *cannot* be said to *arise out of*, the employment.

On appeal from the Supreme Court, whose opinion is reported in 87 *N. J. L.* 103.

For the appellant, *McCarter & English*.

For the respondent, *Clarence E. Case*.

The opinion of the court was delivered by

WALKER, CHANCELLOR. The question argued, and therefore the only one to be decided upon this appeal, is as to whether or not an employer is liable under the Workmen's Compensation act (*Pamph. L.* 1911, *p.* 134) to make compensation for injury to an employe which was the result of horse-play or sky-larking, so called. The injury in this case resulted in death. The facts are succinctly stated in the opinion of Mr. Justice Kalisch in the Supreme Court, as follows:

"William Hulley, a journeyman plumber, the petitioner's decedent, was in the employ of the prosecutor, a master plumber. On the 17th day of September, 1913, the decedent was doing a plumbing job for his master in a dwelling-house, the completion of which job required some fittings that were contained in a bin in his employer's shop. At five o'clock in the afternoon the decedent quit work and went to his employer's shop, and, while on his way to the bin for the fittings to be used on the job in which he was engaged, a fellow-workman, in a spirit of play, whom the deceased was passing, swung his arm around, either to knock off decedent's hat or to strike him, whereupon the decedent, in dodging the attack, slipped on the descending concrete floor, fell, and sustained injuries which caused his death."

It seems to be immaterial whether Hulley instigated the larking or took part in it, and it may be assumed that he did neither, which appears to be the fact.

To warrant recovery for the death of an employe under section 2 of the act mentioned, it must not only appear that it was the result of an accident which occurred "in the course of the employment" but also that it arose "out of the employment." *Bryant* v. *Fissell,* 84 *N. J. L.* 72.

The judge of the Somerset Common Pleas held that the petitioner was entitled to recover for the death of her intestate for injuries sustained by reason of the accident, which, he says, arose out of and in the course of the decedent's employment. Although the findings of the Court of Common Pleas as to the facts of the case are conclusive, according to section 18 of the act, and the decision of the Supreme Court in *Sexton* v. *Newark District Telegraph Co.,* 84 *N. J. L.* 85 (affirmed on another ground, *S. C.,* 86 *Id.* 701), and, therefore, are conclusive here, yet, nevertheless, the law arising upon ascertained facts is a question for the court reviewing the decision. *Bryant* v. *Fissell, supra.*

The Supreme Court in its opinion properly held that the principle to be deduced from the adjudications in this state is, that where an accident is the result of a risk reasonably incident to the employment, it is an accident arising out of the employment, but the facts of the case at bar do not bring it within the doctrine. In none of the cases cited by the Supreme Court did the injury result from horse-play or sky-larking, not even in the Massachusetts case (*In re Employers' Liability Assurance Corporation,* 102 *N. E. Rep.* 697; *S. C., sub nom. McNichol's Case,* 215 *Mass.* 497) wherein it was held:

"Under *Stat.* 1911, *ch.* 751, *part* 2, § 1, which provides that payments of compensation under the Workmen's Compensation act shall be made where an employe 'receives a personal injury arising out of and in the course of his employment,' in order that a claim for such compensation should be sustained, it must appear that the injury had its origin in a risk connected with the employment and that it flowed from that source as a natural consequence.

"Injuries, resulting in death, received by a checker in the employ of a firm of importers, while doing his work at a

dock, from blows or kicks given him by a fellow-workman in 'an intoxicated frenzy and passion,' where such fellow-workman was known to the superintendent in charge of the work to have the habit of drinking to intoxication and when in that condition to be quarrelsome, dangerous and unsafe to work with, and knowingly was permitted by such superintendent to continue to work on the day of the injury while in such a condition of intoxication, are injuries arising out of and received in the course of the workman's employment within the meaning of the Workmen's Compensation act."

And Chief Justice Rugg, in delivering the opinion of the court, observed (at *p.* 498) :

"The first question is whether the deceased received an 'injury arising out of and in the course of his employment,' within the meaning of those words in part 2, section 1 of the act. In order that compensation may be due the injury must both arise out of and also be received in the course of the employment. Neither alone is enough.

"It is not easy nor necessary to the determination of the case at bar to give a comprehensive definition of these words which shall accurately include all cases embraced within the act and with precision exclude those outside its terms. It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a casual connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be

peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

In McNichol's case the Supreme Judicial Court of Massachusetts cited the English cases in which it had been held that certain extraneous injuries arose in the course and out of employment, and also those in which the contrary had been held, citing *Armitage* v. *L. & Y. Railway Co.* and *Craske* v. *Wigan, infra,* observing, in effect, that the conclusions reached in those cases accorded with their facts. We regard the McNichol case as an authority for the result reached in the case at bar.

We have no case in this state in which the right to recover under the Workmen's Compensation act has arisen out of an accident which was the result of horse-play or sky-larking, so called; but the right to recover in such circumstances has been denied in several well-considered English cases, and the Supreme Court said in *Bryant* v. *Fissell, supra,* that, as the language of the British Workmen's Compensation act with reference to an accident arising out of and in the course of employment is identical with that of our own, therefore cases in that jurisdiction construing that language will be useful in construing the same language in our own act.

In *Armitage* v. *L. & Y. Railway Co.* (1902), *L. R., 2 K. B.* 178, a boy sixteen years of age, engaged at work where he and other boys were employed, was pushed into a pit by another boy for a "lark." Becoming angry he picked up a piece of iron and threw it at the boy who pushed him in; it missed him and hit another boy in the eye, injuring him, and for which he claimed compensation from his employer. The county court judge held that the accident was one which arose out of and in the course of the boy's employment, and awarded compensation. This judgment was reversed. Three opinions were delivered in the case. Collins, M. R., held that

the findings of the county judge on questions of fact, if there be evidence to support them, and he has not misdirected himself in point of law, are final. Among other things he said (at p. 181) :

"A boy engaged in the same work as the respondent, in anger threw a piece of iron at another boy, which missed him and hit the respondent. This was a wrongful act entirely outside the scope of the employment. The statute does not provide an insurance for the workman against every accident happening to him while he is engaged in the employment of his master, but only against accidents arising out of and in the course of that employment.

\*    \*    \*    \*    \*    \*    \*

"As a matter of law, it cannot be said that an accident caused to a workman while engaged in his work by a fellow-workman doing a wrongful act, entirely outside the scope of his employment, is an accident arising out of and in the course of the employment. For these reasons I think the appeal must be allowed."

Mathews, L. J., observed (at p. 182) :

"The act gives compensation in respect of accidents 'arising out of and in the course of the employment.' If the words had been merely 'arising in the course of the employment,' possibly the result might have been different, but we have to deal with the additional words 'out of,' which we must suppose to have been introduced by the legislature for some reason."

And Cozens-Hardy, L. J., said (at p. 183) :

"I think that some meaning must be given to the words 'out of' in the section. They appear to point to accidents arising from such causes as the negligence of fellow-workmen in the course of the employment, or some natural cause incidental to the character of a business. An accident arising out of the dangerous nature of a business carried on, and not involving any human agency, such, for instance, as spontaneous combustion of some material, might be said to arise out of the employment. But I do not think that an accident caused by the tortious act of a fellow-workman, having no

relation whatever to the employment, can be said to arise out of the employment."

In *Fitzgerald* v. *W. G. Clarke & Son* (1908), *L. R., 2 K. B.* 796, it was held:

"An employer is not liable under the Workmen's Compensation act, 1906, to pay compensation for injury caused to a workman while engaged at his work by the tortious act of a fellow-workman which had no relation to the employment.

"The words 'out of and in the course of the employment' in section 1, subsection 1, of the act are used conjunctively, and are not to be used as meaning out of—that is to say, in the course of. The words 'out of' point to the origin or cause of the accident; the words 'in the course of' to the time, place and circumstances under which the accident takes place."

In dodging the blow intended for him or his hat, Hulley did, in effect, the same as the lady's maid in *Craske* v. *Wigan* (1909), *L. R., 2 K. B.* 635, who, when a cockchafer (a large European scarabaeoid beetle) flew into the nursery where she sat sewing, threw up her hand to prevent it striking her in the face and hit her right eyeball so violent a blow with the bent knuckle of her right thumb as to cause an injury resulting in permanent defective vision. It was held that the injury was not caused by an accident arising out of the employment within the meaning of the act.

In *Wrigley* v. *Nasmyth, Wilson & Co., Workmen's Compensation Reports (England)* 1913, *p.* 145, it was held:

"A turner while larking with another turner was knocked into a lathe, thereby injuring himself. Held, that the accident did not arise 'out of and in the course of the employment' within section 1, subdivision 1 of the Workmen's Compensation act, 1906."

In *Hillis* v. *Shaw, Id.* 744, it was held:

"A domestic servant whilst in the course of her employment was accidently shot and injured by a farm laborer who was carrying a gun from the house to the fields, where it was required by the employer for the purpose of shooting crows. In reply to the question, 'Did he present it at you in a joke?' put by the county court judge, the injured servant stated,

'He might have pointed it at me; it was not intended.' Held, that the evidence given by the servant herself was sufficient to justify the conclusion that the injury was caused by the larking or fooling of the laborer; and that, therefore, this was not an accident arising out of the employment within the meaning of section 1, subdivision 1 of the Workmen's Compensation act, 1906."

In the opinion of the Supreme Court it is stated that it was a negligent act of the fellow-workman to make a pass at the decedent. This, too, we think is erroneous. It is true that negligence is either the omission to do something which a reasonable man, guided by circumstances which ordinarily regulate the conduct of human affairs, would do, or the doing something which a prudent and reasonable man would not do (*Bouv. Law Dict. (Rawle's rev.)* 748), yet, when negligence arises out of an act of commission by one for whose conduct another is responsible, it must be with reference to some duty which the responsible person owed to the party injured.

This is illustrated in *Bittle* v. *Camden and Atlantic Railroad Co.,* 55 *N. J. L.* 615, wherein it was held that if the blowing of a whistle on a railroad train in approaching stations and crossings, and passing them, was done negligently, wantonly or maliciously by an engineer, his employer, the railroad company, was liable for damages which resulted from the frightening of a horse through such conduct. It appeared that the engineer, instead of blowing the whistle in the ordinary way, pulled the whistle wide open and blew it a great deal louder and shriller than usually. The railroad company owed a duty to the owner of the horse to have the whistle blown in the usual manner, and was, therefore, liable for damages resulting from its employe blowing it in an extraordinarily shrill and loud manner.

In the case at bar the employer was not charged with the duty to see to it that none of his employes assaulted any other one of them, either willfully or sportively. And when one made such an assault upon another he was guilty of the doing of a negligent act as an individual tort-feasor, for which his employer was not responsible.

The cases in which railroad companies have been held liable for assaults committed by their employes upon third persons in nowise militate against this doctrine, for that liability arises from the obligation of a carrier to protect passengers against any injury from the negligent or willful misconduct of its servants in executing the contract to carry. *Haver* v. *Central Railroad Co.*, 62 *N. J. L.* 282. See, also, *Haver* v. *Central Railroad Co.*, 64 *Id.* 312. It is a general rule that the master is liable for the act of a servant within the scope, but not for acts committed outside the scope, of his employment. 26 *Cyc.* 1525. An exception to the rule confining a master's liability to acts of a servant within the scope of his employment and line of duty, is the responsibility of a railroad company for assaults committed by its servants upon passengers, upon the ground that the company undertook an additional duty involving the utmost care and good faith, its liability being placed on the ground of public policy. *Id.* 1527.

The accident in this case was clearly not one within the scope of the employment of the decedent, nor was it one arising out of a risk reasonably incident to that employment.

We are of opinion that an employer is not liable under the Workmen's Compensation act (*Pamph. L.* 1911, *p.* 134) to make compensation for injury to an employe which was the result of horse-play or sky-larking, so called, whether the injured or deceased party instigated the occurrence or took no part in it, for, while an accident, happening in such circumstances, may arise in the course of, it *cannot* be said to *arise out of,* the employment.

The judgment under review must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, BERGEN, MINTURN, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ. 13.