New Jersey Department of Labor,
Workmen's Compensation Bureau.

ROSE BARRESSE ET AL., PETITIONER, v. STANDARD SILK
DYEING COMPANY, RESPONDENT.

For the petitioner, *William Sheps* and *Benjamin L. Stein.* (*Nathan Rabinowitz,* of counsel).

For the respondent, *Edwin J. O'Brien.*

This is a proceeding brought by Rose Barresse, against the Standard Silk Dyeing Company for compensation for herself and dependents. The claim is based by reason of the death of Francesco Barresse, her husband, who was shot and killed while working for the respondent as a watchman. The respondent admits that the deceased was killed in the course of his employment but denies that his death arose "out of" his employment. The defense urged is that the death of the deceased was due to an act of "horse play" or "skylarking" between co-employes and under our law makes an injury flowing therefrom non-compensable. The case relied upon by the respondent is *Hulley* v. *Moosebrugger,* reported in 88 *N. J. L.* 161; 95 *Atl. Rep.* 1007. The principle therein established by our Court of Errors and Appeals in that case is that an employer is not liable under the Workmen's Compensation act to make compensation for injury to an employe which was the result of "horseplay" or "skylarking" so called, whether the injured or deceased party instigated the occurrence or took no part in it. The facts proven in this case, however,

are clearly distinguishable from the case of *Hulley* v. *Moose-brugger, supra,* and in my opinion has no application to the case at bar. The incidental duties of the deceased are as follows: On September 20th, 1930, the deceased was employed, on the occurrence of his death, as a watchman to guard the property of his employer, a silk dyer. He was stationed in a small building adjoining a gate which led into the yard of the dyeing plant. Entrance to the yard of the plant was gained through the gate by request of the deceased who controlled its operation and by passing through the building in which the watchman was stationed. The duties of the deceased as watchman as disclosed from the evidence was to protect and guard his employer's property which included the duties of restraining persons from entering the premises without first obtaining his permission, and to prevent all "fooling" around the premises. These duties were imposed upon the deceased by his superior, Charles Stuart, who testified as to the above duties imposed by him on the deceased. Testimony was adduced in which objects were thrown from a hilltop near the premises and of men congregating near the gate who were ordered stopped by the decedent in accordance with the orders given him by Stuart to stop all "fooling." The circumstances under which the deceased met his death show that he was killed in the performance of his duty in preventing and actually stopping an act of "horseplay" by two co-employes, under the following circumstances: While the deceased was on duty in the building adjoining the gate and was engaged in conversation with one Nicholas Charicco, another employe, one Joseph Oakley, who was employed as a truck driver, entered the building, passed some remark to Charicco, and swung him around a swivel chair on which Charicco was seated. Oakley entered the yard and Charicco began sharpening his knife on the doorstep of the building in which the deceased was seated and said to Oakley that he would cut him, whereupon Oakley drew a revolver which had been furnished to him by the respondent and asked Charicco, "how would you like to have this? I'll shoot that: I'll shoot that:" The deceased turned to Charicco and demanded in Italian that he stop (*ferma*) whereupon in com-

pliance with the orders of the deceased, he desisted and began to converse with ·the deceased for about five minutes when the revolver held by Oakley went off and killed Barresse. The testimony indicates clearly that the deceased was performing his duties imposed on him as a watchman by his superior, Stuart, in attempting to ward off any action on the part of co-employes which might prove harmful. It is also reasonable to conclude from the testimony that the duties of a watchman in fulfilling his contract of service would naturally extend to the avoidance of any act on the part of employes where a knife and revolver were used to order such action on the part of co-employes to stop. In *Bryant* v. *Fissel,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, Mr. Justice Trenchard laid down the rule applicable in this case as follows: "An accident arises 'out of' the employment when it is something the risk of which might have been contemplated by a reason- able person, when entering the employment, as incidental to it. A risk is incidental to the employment when it be- longs to or is connected with what a workman has to do in fulfilling his contract of service. And a risk may be inci- dental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the *special nature* of the employment."

In the present case I am of the opinion that the deceased acted in the performance of his duties in attempting to pro- tect his employer by ordering Charicco and Oakley to stop flourishing their dangerous weapons, and I find that in com- pliance with the orders of the deceased, that the said Cha- ricco desisted and that the fatal shooting by Oakley followed some minutes later is undisputed. Barresse performed his duty and compensation will be allowed.

2. The dependents are as follows:

| Name of Each Dependent. | Age at Last Birthday. | Relation to Decedent. |
| --- | --- | --- |
| Rose Barresse | 47 | Widow |
| Frank Barresse | 13 | Son |
| Theresa Barresse | 15 | Daughter |
| Rose Barresse | 9 | Daughter |

3. That the respondent is directed to make payment of the burial expenses not to exceed $150.

4. The legal advisors, Benjamin L. Stein, William Sheps and Nathan Rabinowitz, of counsel, are entitled to compensation in the sum of $950 to be paid by the petitioner and $500 to be paid by the respondent.

5. Stenographic fees will be paid by the respondent.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

JOHN J. STAHL,
*Deputy Commissioner.*