ROSE BARRESE, ADMINISTRATRIX OF FRANCESCO BAR-
RESE, DECEASED, PETITIONER AND DEFENDANT IN
CERTIORARI, v. STANDARD SILK DYEING COMPANY,
RESPONDENT AND PROSECUTOR IN CERTIORARI.

Submitted May 14, 1932—Decided November 10, 1932.

Before Justices TRENCHARD, CASE and BROGAN.

For the prosecutor in *certiorari, Edwin Joseph O'Brien.*

For the defendant in *certiorari, Benjamin L. Stein, Nathan
Rabinowitz* and *William Sheps (Benjamin L. Stein,* of
counsel).

PER CURIAM.

This writ brings up for review a judgment obtained by the
petitioner under the Workmen's Compensation act (*Pamph.
L.* 1911, *p.* 136), on account of the death of Francesco Bar-
rese, who was employed by the Standard Silk Dyeing
Company. 10 *N. J. Mis. R.* 892; 161 *Atl. Rep.* 653.

The decedent was employed as a dyers' helper and relief
watchman. Among the duties of the decedent as watchman,
were the special ones of stopping all "fooling" or skylarking
on the premises of the company and of guarding the property
of his employer from vandals.

On Saturday, September 20th, 1930, at about three-thirty
o'clock in the afternoon, the decedent was sitting in the "time
room" of the company's plant, conversing with one Nicholas
Chirico, one of the employes of the company. While so con-

versing, one Joseph Oakley, a truck driver employed by the company, entered the "time room" and began "fooling" with Chirico, swinging him around in a swivel chair, and there ensued considerable rough and vulgar talk between Oakley and Chirico. The latter, taking a knife from his pocket, threatened to cut Oakley. Then Oakley left the "time room" and, while on the outside but still within the gates, pulled a revolver from his holster, while Chirico was standing in the doorway. Thereupon the decedent, in an effort to stop the altercation and "fooling" between Oakley and Chirico, called out "stop." Chirico then walked to the decedent and stood talking to him for two or three minutes, when the decedent was wounded by a bullet which came through the window from the revolver of Oakley. The decedent thereafter died on his way to the hospital.

The foregoing matters of fact were found by the deputy commissioner and were quite justified by the great weight of the evidence. He also found that the accident was one arising in the course of the employment, and we think rightly. The decedent was doing what he was employed to do during the time which he was employed, and at the place where he might reasonably have been at that time. *Bryant* v. *Fissell & Co.,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458.

Also, we think the decedent met his death by reason of an accident which arose out of his employment, as the deputy commissioner found. The decedent was charged with the duty of stopping all skylarking and fooling between employes of the company within the gates. This implies that when such fooling occurred in the presence of the decedent, the decedent was to adopt such means and methods as to him appeared sufficient and reasonably certain to put an end to it.

An accident arises out of the employment when, as here, it is something the risk of which might have been contemplated by a reasonable person when entering the employment, as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. A risk may be inci-

dental to the employment when it is either an ordinary risk directly connected with the employment or an extraordinary risk which is only indirectly connected with the employment, owing to the special nature of the employment. *Bryant* v. *Fissell & Co., supra;* 86 *Atl. Rep.* 458.

It is reasonable to presume that a person charged with stopping fooling between co-employes might sometime be assaulted, either willfully or sportively, by the persons whose fooling the decedent may attempt to stop. The decedent's employment was a special one, connected with which were extra hazards and special dangers.

This case is clearly to be differentiated from the case of *Hulley* v. *Moosbrugger,* 88 *N. J. L.* 161; 95 *Atl. Rep.* 1007, upon which the company relies. In that case, two employes engaged in an altercation, having no duties with respect to the stopping of such occurrence. In the instant case, the decedent was specifically charged with the duty to stop or attempt to stop such occurrences, and was performing his duty at the time of the accident. In the Hulley case, however, the court said, "it [an accident] arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is requested to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident to the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment. * * * The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relationship of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

Counsel for the company contends that the decedent should

have done something in addition to what he did to constitute performing his duty in the furtherance of his master's business. But we think it cannot reasonably be said that in order to be entitled to compensation, a watchman charged with the duty to stop fooling between employes of his master, should actually take physical hold of the employes engaged in an act of fooling or flourishing dangerous weapons. The question of how an employe fulfills the duties imposed upon him by the master is immaterial in such a case as this so long as the employe is actually engaged in his master's business and is fulfilling his duties in a manner which to him appears reasonable.

In the case of *Emerick* v. *Slavonian Roman Greek Catholic Union,* 93 *N. J. L.* 282; 108 *Atl. Rep.* 223, a bartender selling intoxicating liquors in his employer's saloon was shot and killed by a patron because of and during a dispute regarding the price of drinks which the decedent sold to such patron and the price of which he was attempting to collect from the patron. The decedent was shot and killed by the patron during such dispute and the court held in that case: "The trial judge was justified in concluding that decedent's death arose out of his employment."

The foregoing observations in effect dispose of every question raised and argued. The company's contention, made in the brief, that the deputy commissioner erred in finding that the wages of the decedent were $35 per week, is not raised by any reason for reversal.

The judgment below will be affirmed, with costs.