Essex County Court of Common Pleas.

GEORGE EVERHART, PETITIONER-APPELLEE, v. NEWARK CLEANING AND DYEING COMPANY, RESPONDENT-APPELLANT.

Decided April 9, 1936.

For the respondent-appellant, *Franklin J. Marryott.*

For the petitioner-appellee, *Charles M. Grosman.*

HARTSHORNE, C. P. J. The main question on this workmen's compensation appeal is whether disfigurement, *per se,* separate and apart from any effect on the functioning of the body and mind, constitutes a basis for compensation.

The petitioner-appellee while employed in the cleaning and dyeing industry was severely burned by cleaning fluid on the face, neck, arms and chest. In addition to the proof that the keloidal scars resulting therefrom did affect his functions to some extent, the testimony and a glance at the man's face showed a serious repulsive disfigurement.

Such disfigurement has an obvious effect on his employ-ability. The loss of the ability to obtain employment directly connotes the loss of earning power. The question therefore becomes—does the act cover the loss of earning power, irrespective of any loss of function in the body and mind.

The act by section 2, paragraph 7 (*Pamph. L.* 1911, *ch.* 95; *Cum. Supp. Comp. Stat.* 1911-1924, *pp.* 3870, 3872, §§ **236-7, 11 (a), (b), (c), provides "compensation for personal injuries to or for the death of such employe * * *

according to the schedule contained in paragraph 11." Paragraph 11 provides for recovery for injuries producing: (a) temporary disability, (b) permanent total disability, (c) partial permanent disability. But in each and every one of the items contained in the long category there set forth the amount of the recovery is to be calculated upon the basis of the employe's wages or compensation. The general theory of the act is thus to give the employe a substantial proportion of the wages he would have earned but for the accident, in return for the earnings lost thereby. In fact as to total permanent disability, upon the termination of the first four hundred weeks, loss of earning power is expressly made the sole basis of recovery.

It is equally true that, in providing for compensation for partial disability, the specific provisions for recovery in the event of the loss of a member or function of the body, may entitle one to recovery, where loss of earning power never occurs. This may be true for instance in the case of an etcher who loses a toe. Such is the reason for the decisions of the courts of this state in *De Zeng Standard Co.* v. *Pressey,* 86 *N. J. L.* 469; 92 *Atl. Rep.* 278; *Burbage* v. *Lee,* 87 *N. J. L.* 36; 93 *Atl. Rep.* 859; *Hercules Powder Co.* v. *Morris County Court,* 93 *N. J. L.* 93; 107 *Atl. Rep.* 433. But such cases are the exceptions which prove the rule, and in all these cases the right of the employe to recover if he had lost earning power, was assumed. In the Burbage case, for instance, Mr. Justice Parker said, "and the term 'disability' *is not restricted* to such disability as impairs present earning power at the particular occupation, but embraces any loss of physical function which detracts from the former efficiency of the body or its members in the ordinary pursuits of life." In the Hercules Powder Company case the court said, "the criterion of a disability, partial in character and permanent in quality, under the statute, *is not limited* to the loss of earning power."

True, in the last of the numerous paragraphs of section 11 scheduling recovery for partial permanent disability, it is provided that "in all lessor or other cases involving permanent loss, or where usefulness of a member or any physical function is permanently impaired, the compensation shall

be * * *." *Pamph. L.* 1911, *ch.* 95, § 11 (W), as amended by *Pamph. L.* 1919, *ch.* 93; *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 3874, § **236-11 (W). It is possible to argue by a purely literal interpretation, that the "loss" there referred to does not include a loss of earning power, but solely the same kind of a loss named in the immediately preceding paragraphs, to wit, a physical or functional loss. But this is a mere implication, and it must be borne in mind that each and all of these named losses would ordinarily give rise to a loss of earning power, and are to be measured in terms of earnings. Moreover, since it is so restrictive of and contrary to, the basic theory of recovery under the statute, as above set forth, such implication, while possible, is not permissible, particularly since the statute, being "a remedial law of prime import, should be liberally construed." *Jersey City* v. *Borst,* 90 *N. J. L.* 454; 103 *Atl. Rep.* 1033.

The conclusion therefore follows that, while not the sole basis of compensation, loss of earning power due to disfigurement is a sound basis therefor. This in fact has been recognized by our courts for more than twenty years. *Clooney* v. *Crescent Glass Specialty,* 37 *N. J. L. J.* 82; *Ecedi* v. *Corn Products Co.,* 40 *Id.* 265; *Dent* v. *Butterworth-Judson Co.,* 43 *Id.* 339. The sole case to the contrary (*Bodewig* v. *Hubert,* 39 *Id.* 172), must be deemed incorrect. Nor would it deem necessary to have gone to the above length merely to follow the above rule, were it not for the fact that the opposite view is so earnestly pressed by able counsel, upon the basis of pertinent decisions and statutes, cited throughout the length and breadth of the land. But the fact that in many other states compensation for disfigurement, *per se,* is expressly provided for, and expressly limited, as it is not in New Jersey, does not prove that the New Jersey legislature did not intend to permit compensation for such condition causing a loss of earning power, when loss of earning power appears for other reasons to have been the major basis of recovery our legislature had in mind. Not only are there doubtless many other states where disfigurement is not specifically provided for, but variant statutes in different jurisdictions ordinarily prove simply the truth of the maxim "many men, many minds."

On the other hand, the English Workmen's Compensation act is not variant from, but quite similar to, ours in its general tenor, so much so in fact that decisions thereunder have many times been considered valuable precedents in construing our own statute. *Bryant, Adm'x,* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458; *Hulley* v. *Mossbrugger,* 88 *N. J. L.* 161; 95 *All. Rep.* 1007; *Phillips, Administrators,* v. *Hamburg-American,* 36 *N. J. L. J.* 167. In England, despite the fact that disfigurement is not expressly covered—exactly the situation here—the courts have permitted recovery for disfigurement, irrespective of its effect on the functioning of the body, on the very basis that such disfigurement affects the employability and earning power. *Ball* v. *Hunt,* 1912 *A. C.* 496, 507. Later, the English act apparently was amended so as to limit recovery for disfigurement expressly. But this possible similar legislative lack in our statute, of course, does not justify judicial refusal to carry out the legislative intent, in New Jersey any more than in England.

The employer further objects to the allowance of compensation for such disfigurement, *per se,* on the ground that there was insufficient proof of its effect upon the employe's ability to obtain employment. The verbal proof to this effect was weak, being merely to the point that this former worker in a cleaning factory was refused employment as a waiter in a beer garden. But the exhibit in the case, the petitioner himself, offered ample evidence to prove the effect of such disfigurement upon his employability. It is the effect in fact which is determinative. The only reason why proof, as to inability to obtain employment in the same or a similar line of employment to that held at the time of the accident, is to be preferred to proof as to inability to obtain employment in other lines, is because the latter proof is subject to other possible explanations, *i. e.,* that the failure to obtain employment was due to lack of skill rather than to the disfigurement. Of course, to be the basis of recovery, the accident must be the cause of the loss of earning power, and not extraneous circumstances, social or economic, affecting either the petitioner or the public.

Objection is raised to the amount of the award for the disfigurement, *per se,* same being thirty per cent. of total perma-

nent disability. While a scrutiny of the employe's scars does show them to be lengthy, lumpy, and repellant, the color of his skin does not make them stand out in such bold relief as they otherwise might. Bearing in mind that a separate award has already been made for the functional effect of such disfigurement, and that the highest award previously made by the courts of this state, for disfigurement *per se,* has been fifteen per cent., such award here, will be reduced to ten per cent. of total permanent disability.

The employer's final objection is to the award of counsel fee in the sum of $450, this because of an offer of settlement in the amount of thirty-five per cent. of total permanent disability made by counsel after the case had been marked ready and contested on the list, but before testimony had been taken. The statute provides "when, however, prior to any hearing, compensation has been offered or paid, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation theretofore offered or paid." *Pamph. L.* 1918, *ch.* 149; *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 3889, § \*\*236-42, as amended by *Pamph. L.* 1928, *ch.* 224, § 17; *Cum. Supp. Comp. Stat.* 1925-1930, *p.* 1986, § \*\*236-58, 17. The purpose of this provision of the statute was clearly to avoid the unnecessary waste of time and expense necessitated by litigation, if fair compensation for the employe was available without resort thereto. Surely it is not too liberal an interpretation of this "remedial statute of prime import," to hold that a compensation offer comes too late, when made after full preparation for trial, attendance of all witnesses and counsel before the court, and the court is officially advised by counsel that the case is ready to proceed. Otherwise, the above statutory provision is rendered largely meaningless. The award of counsel fee by the lower court, which of course must be reviewed upon the basis of the work done and results attained in such court, and not the ultimate correctness of such results, will stand.

The order of the workmen's compensation bureau in favor of the petitioner, as above modified, is affirmed, and a determination may be entered accordingly.