NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

JOSEPH H. CLARKE, PETITIONER, v. WARD BAKING
COMPANY, RESPONDENT.

Decided March 6, 1941.

For the petitioner, *Curtis R. Brundage.*

For the respondent, *Joseph H. Clarke* and *John W. Taylor.*

\*     \*     \*     \*     \*     \*     \*

The facts in this case indicate that the petitioner was an employe of the respondent working as a truck driver. On the twenty-sixth day of April, 1940, he reported for work at the regular time, which was during the very early hours of the morning, and in accordance with his duties, commenced to load his truck. While loading his truck, according to his testimony, he left his work to go to the toilet; that while passing through a dimly lighted narrow hallway, on his way to the toilet he fell. He was seen by a fellow employe, one Schmidt, who says the petitioner slumped against the wall in a dazed condition with blood coming from his forehead.

The petitioner contends that he suffered these injuries as a result of an accident arising out of and in the course of his employment, while the respondent, on the other hand, contends that the petitioner had a pre-existing condition with a headache and a spell of dizziness; that his fall and his injuries were not due to anything associated with his employment, but on the contrary were due to his own illness wholly unassociated with his employment.

This much is true, and I am satisfied it is so: the proofs satisfy me that the petitioner prior to the event of his falling, was not feeling well, he apparently had a headache and some dizziness and I am satisfied that there is no proof from which I may draw a reasonable inference that the fall was due to something connected with the petitioner's employment. The petitioner attempted to bring into the picture a box. It was his hope that I might draw an inference that because a box was in the hallway that he probably fell over the box. I can't subscribe to that. I am satisfied that the petitioner doesn't really know what caused him to fall. He was frank enough to admit that while he was in the hospital, lying in bed and thinking over the events regarding his fall, that in reconstructing the picture he came to the conclusion that he must have fallen over the box. That conclusion is purely a figment of his own mind, and it is not the kind of proof that I should accept in reaching a conclusion that he had in fact, tripped over the box and that it was that incident that caused his injury. The fact that he may have at some time after the accident thought over the thing and attempted to place a box in his way and have that box be the cause of his fall is nothing more than a self-serving declaration on the part of the petitioner. If the petitioner had, in fact, fallen over that box, he wouldn't have had to reconstruct the scene of the accident and the incidents leading up thereto. He would know whether he tripped over a box and would unhesitatingly have said that it was the box that caused his fall. I am also satisfied, if he had in fact, fallen over the box he would have immediately charged that as being the cause of his fall, and would have so informed his fellow employes who came to his rescue, but he was silent as to that. It appears to me that the illness of the petitioner on that morning was of such nature that it is quite reasonable to draw the inference that he had another dizzy spell and fell as the result of that. He had had a similar experience that morning, although the previous experience did not result in a fall.

\*     \*     \*     \*     \*     \*     \*

It is not only necessary before an award can be made that it be concluded that the accident occurred "in the course of"

the employment; but it must also be found that the accident arose "out of" the employment. Neither finding alone is enough. The evidence must be convincing that the cause of injury was due to a risk which was directly connected with the employment. *Hulley* v. *Moosebrugger,* 88 *N. J. L.* 161; 95 *Atl. Rep.* 1007. An accident arises "out of" the employment when it is something the risk of which might have been contemplated by a reasonable person, when entering the employment, as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. *Byrant* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458. Whether the proof be direct, circumstantial or presumptive, it must show that the cause of injury was due to a risk which was directly or indirectly connected with or incidental to the employment.

It is therefore insufficient on the part of the petitioner to merely show that he suffered injuries during the course of his employment, the burden being upon him to show that the injuries arose out of his employment. If I could conscientiously find that Clarke tripped over a box, then of course, that would be an incident associated with his employment and I would be obliged to find that the petitioner sustained an injury which arose out of his employment. There are cases where respondents have been held liable in the face of a history of a predisposed factor on the part of the petitioner, but from analyzing those cases, I find that liability had been imposed where the employment placed the petitioner in a dangerous situation. For example, if a man were working in the immediate vicinity of an open fire, and he fainted or had a dizzy spell and received injuries as a result of a fall in the fire, then, of course, the ultimate disability was caused not so much by the original fainting spell or the fall, but rather the fact that the employment had placed the petitioner in a dangerous situation and by reason of that dangerous situation, the end result occurred. But that is not the picture in this case, as I view it.

Reference was made at the conclusion of the case and in the petitioner's brief to the case of *McCarthy* v. *General Elec-*

*tric Co.,* 143 *Atl. Rep.* 116, in the Superior Court of Pennsylvania. In that case the employe was suffering from an organic disease which caused him to fall. He suffered concussion of the brain and died. The court pointed out that the death was caused by the fall and not by the pre-existing disease and the fall was held to constitute an accident. In that case there was no evidence to show how McCarthy "happened to fall." The court said:

"As he fell while upon the employer's premises and engaged in his work, the injury as sustained during the course of his employment comes within the provisions of the statute. See section 301, act of June 2d, 1915, *P. L.* 736, 738 (*Pa. St.,* 1920, *pp.* 21983, 21984). *In England and some American jurisdictions, the injury must grow out of the employment, but our statute contains no such requirement. It is sufficient if the accidental injury happens in the course of the employment."*

As pointed out in the McCarthy case the Workmen's Compensation act of the State of Pennsylvania merely requires the accident to occur *during the course of an employe's employment.* The Workmen's Compensation act of the State of New Jersey has a dual requirement, that is, the accident must "arise out of and in the course of the employment." The difference in the statutes is recognized in the McCarthy opinion and it therefore is clear and obvious that the McCarthy case cannot be considered as an opinion which is in any way to be considered as helpful or as setting forth the standard by which a compensable accident is to be allowed in the State of New Jersey.

\*      \*      \*      \*      \*      \*      \*

For it is always the duty on the part of a claimant in a compensation case, such as here, to prove that the injury was caused by (a) an accident, (b) arising out of, and (c) in the course of his employment. *Dunnewald* v. *Harry Steers, Inc. (Court of Errors and Appeals),* 89 *N. J. L.* 601; 99 *Atl. Rep.* 345. The proof, it is true, may be direct, presumptive or circumstantial, but legal proof, nevertheless, it must be.

The Supreme Court in *Nardone* v. *Public Service Co-ordinated Transport Co.,* 113 *N. J. L.* 540, in considering

this very same problem says: "Our analysis of the cases on this subject leads us to the conclusion that in each case where liability was imposed on the employer, and sustained, on presumptive or circumstantial evidence there is to be found circumstances which form the basis for a rational inference, tantamount to legal proof of the fact, that the accident resulting in death arose 'out of' and 'in the course of' the employment."

In the Nardone case it appeared from the proofs that the deceased employe in the performance of his duty, was required to go into an open yard to obtain coal for the furnace. On a certain morning the deceased was found unconscious in the basement; and near the coal in the yard was a shovel and wheelbarrow, showing that he had probably gone to the yard for coal. He had been struck on the head by some bricks which fractured his skull and the petitioner's theory of the accident was that the decedent had been struck by a brick which fell from a brick stack some 250 feet in height which stands about thirty feet from the entrance to the basement in the building in which the decedent worked. The respondent's proofs completely rebutted the petitioner's proof that a brick had fallen from the stack and it was held that although there was proof of the finding of the decedent's body on the floor of the garage where he had a right to be and proof of the injury to the petitioner's head, that such was not the basis from which a rational inference or inferences tantamount to legal proof of the fact that the decedent's death was due to a risk which he as a reasonable person might have contemplated, and that the risk belonged to or was connected with what he as a workman, had to do in fulfilling his contract of service.

Another interesting case to be noted is *Armstrong* v. *Union County Trust Co.*, 14 *N. J. Mis. R.* 648; 186 *Atl. Rep.* 522. In that case, the decedent met his death while in the employ of the respondent company. He was employed as a utility man in the bank and at the time he met with the fatal accident was properly engaged in the work for which he was employed. At the particular time he had been directed to go into the cellar of the building occupied by the bank to scrape some

paint off a glass door. He was found lying on the floor with a fractured skull. The petitioner proved the facts of employment; that the injuries suffered by her husband happened during the course of his employment but was not able to produce any proof as to how the happening occurred. An award was made in favor of the petitioner by the Compensation Bureau and in affirming the reversal ordered by the Court of Common Pleas, the Supreme Court in a *per curiam* opinion said: "The Nardone case is * * * dispositive of the complaint before us." In other words, it concluded that the petition should be dismissed because there was "no proof of any accident arising out of the decedent's employment."

The Supreme Court in *Jacques Wolfe & Co.* v. *Piplin*, 14 *N. J. Mis. R.* 146; 183 *Atl. Rep.* 187, said: "The petitioner must do more than show that the injury 'could have been' the result of the accident." In other words, where the proofs offered by the petitioner are meagre and uncertain, an award cannot be made in favor of the petitioner and predicated on such testimony.

In Johnson *v.* Ulster Iron Works, Johnson, shortly before his death, was working at a furnace. He was observed to be falling and he died of a cerebral hemorrhage. In this case, the petition was dismissed on the ground that the petitioner had failed to establish proof of an accident, the Supreme Court saying: "This is a case where the proofs show no more than a fall at the usual place of work * * *." In the instant case, there is not even testimony that the fall alleged to have been sustained by Clarke occurred at his usual place of work.

In this case there does not appear to be any fact tantamount to legal proof from which a reasonable inference can be drawn that Clarke suffered injuries as a result of some act or incident associated with his employment. As against the conjectural charge that he fell over a box is the testimony of George Mayer who spoke with the petitioner shortly after the alleged occurrence and who stated that he was informed by Clarke that he had suffered from headaches all the way from his home to his place of employment the morning of the occurrence and he was also told by the petitioner that as he,

Clarke, went to the men's room "he felt dizzy" and fell without knowing what had happened. There is also the testimony of Mr. Jackson who stated that he visited the petitioner during the petitioner's confinement at the Presbyterian Hospital. When Mr. Jackson asked what had happened, the petitioner told him that he did not know.

\*      \*      \*      \*      \*      \*      \*

I think it is only human nature for anyone who has been caused to fall by reason of tripping over some object to loudly, and perhaps ungentlemanly, express his opinion of the object which caused such fall; therefore, it may be said that Clarke's failure to blaspheme "something" is indicative of the fact that he had nothing to blaspheme. The petitioner's case is best illustrated by the fact that while in the hospital a week or two after the alleged occurrence, he attempted to reconstruct what must have happened. There is nothing in the records of the Presbyterian Hospital, where the petitioner was confined following the occurrence, which attributes the petitioner's fall to a "trip" or any such similar occurrence. Dr. Rathgeber, the attending physician, likewise, was not given a history by the petitioner of a fall such as he now alleges; it was not until July, some three months after the occurrence, that the petitioner for the first time informed anyone of what he now alleged must have happened. Again this is not typical of "human nature."

\*      \*      \*      \*      \*      \*      \*

It is therefore ordered that the petition be and is hereby dismissed.

HARRY S. MEDINETS,
*Deputy Commissioner.*