New Jersey Department of Labor,
Workmen's Compensation Bureau.

## MARK STARK, PETITIONER, v. MARTIN DRUG COMPANY, RESPONDENT.

Decided May 16, 1944.

For the petitioner, *David Cohn.*

For the respondent, *John W. Taylor.*

A formal claim petition having been filed by the petitioner,. claiming compensation benefits under the terms and provisions of the Workmen's Compensation Act of New Jersey,. as amended and supplemented, *N. J. S. A.* 34:15–1, *et seq.,* and an answer having been duly filed by the respondent, the matter came on for hearing before me at Paterson. Testimony was taken on behalf of both parties.

Petitioner testified that he had been employed by the respondent since March 4th, 1940, as a general handy man and clerk. He stated that on December 2d, 1940, while working at his regular job about 11:00 P. M., a Mr. Dienges, who was employed by the respondent as a truck driver, came in and said there was a flood in the restaurant adjoining respondent's premises; that Dienges told Mrs. Goldstein, an officer of the respondent corporation, that he was going to fix the radiator in the restaurant; that Mrs. Goldstein then directed petitioner to accompany Dienges and help; that he walked into the restaurant and slipped and fell on the wet floor of the restaurant and that a radiator toppled over on his left foot causing injury to same; that he was thereafter taken to the Barnert Memorial Hospital by a Mr. Hoffman, a salesman, who happened to stop by about the time the injury occurred.

On cross-examination petitioner denied that anyone from respondent's insurance carrier had interviewed him and obtained a statement concerning the alleged occurrence. He admitted, however, that Mr. Dienges was not only employed as a part time employee of the respondent company, but was employed as the superintendent of the apartment building in which both the respondent's place of business and the aforementioned restaurant were located and in that capacity employed by a concern entirely unrelated to respondent. company.

A Mr. Samuel Hoffman, a salesman, selling general merchandise, testified that he was in respondent's place of busi-

ness between 10:30 and 11:00 P. M., on December 2d, 1940,. and that he saw petitioner working; that a man came in and told Mrs. Goldstein that a radiator in the restaurant was leaking; that Mrs. Goldstein told petitioner to go with this other man and help fix the radiator.

On behalf of respondent, Mrs. Goldstein, secretary and treasurer of the respondent company, testified that Mr.. Dienges was employed as superintendent of the apartment house building in which respondent's store and the restaurant were located and that he was, also, employed as a part time worker by respondent company. She stated that, on the night of December 2d, 1940, petitioner and Mr. Dienges, as well as herself, were employed in respondent's store. They were packing orders to be delivered the following day. Mr. Dienges lived in an apartment located in the same building and according to her his work as superintendent of the building, in charge of its maintenance, was entirely separate and distinct from any work performed by him on behalf of respondent company. She said that sometime during the latter part of the evening,. Mr. Dienges, in her presence, told petitioner that there had been a complaint, by the operator of the restaurant, respecting a radiator therein located. She heard Mr. Dienges ask petitioner if he would help him with the radiator after they finished their work for respondent company, and petitioner said that he would. After petitioner and Dienges finished their work, for respondent about 10:30 P. M., they left respondent's premises and entered the restaurant premises.. Thereafter Mrs. Goldstein learned that petitioner suffered injury while on the restaurant premises. She denied that she instructed petitioner to help Dienges.

John Dienges testified that he was employed as superintendent of the apartment building wherein respondent's business, as well as the restaurant, was operated. In addition to his work as superintendent of the building he, also, had part time work with respondent company. He is now no longer employed by respondent. As superintendent of the building he was in charge of the maintenance of the general premises. He stated that on the night of December 2d, 1940, he was working in respondent's store with petitioner and Mrs. Gold-

stein and that while he and petitioner were working together he asked petitioner to give him a hand fixing the radiator in the restaurant, after they finished their work for the respondent company. Petitioner said that he would. They finished their work late in the evening and then he and petitioner went next door to the restaurant to fix the radiator. It was while they were on the restaurant premises that the petitioner met with injury. Dienges' work, according to him, was nowise related to his employment by respondent and petitioner's services were rendered in response to Dienges' personal request for help.

Mr. Joseph Mustard, an investigator for the Liberty Mutual Insurance Company, testifying on behalf of respondent, stated that he interviewed petitioner December 19th, 1940, respecting the alleged incident. Mr. Mustard stated that he was told by petitioner: that he was requested on the evening of December 2d, 1940, by Mr. Dienges, to go on the restaurant premises with him, after they had finished their work for respondent, to help him and that he informed Dienges that he would help him. Petitioner then said that he did not mind doing this favor for Dienges inasmuch as he was a good friend of his. Petitioner further stated, to Mr. Mustard, that when he and Dienges finished their work for respondent company about 11:30 P. M., they went into the adjoining restaurant to drain the radiator and that it was while they were preparing to do this that he met with the alleged injury. Petitioner told Mustard that he was not working for respondent company at the time of the injury and that he was in the restaurant merely for the purpose of helping Dienges.

Mr. Hoffman, who had testified in petitioner's main case, was recalled as a rebuttal witness and testified that he was present at respondent's place of business when Mr. Dienges came in and said there was a leak in the radiator of the restaurant and requested petitioner to help him. Hoffman further stated that Mrs. Goldstein instructed petitioner to help Dienges repair it. On cross-examination Hoffman stated that Mrs. Goldstein had merely permitted Stark to help Mr. Dienges.

I have carefully considered the testimony offered on behalf of both of the parties and find that the weight of the believable testimony lies with respondent. There is no doubt in my mind but what Dienges, who was employed as the superintendent of the building in which the restaurant and respondent's premises were located and who was responsible for the maintenance of the entire building, merely requested Stark as a personal favor, to himself, to help him with the heavy radiator and that Stark's presence in the restaurant was occasioned merely by his own voluntary act of helping Mr. Dienges. I find as a fact that Mrs. Goldstein did not instruct nor direct petitioner to help Dienges and further find as a fact that petitioner was not engaged in the furtherance of his employment by respondent at the time of the alleged injury and that he did not leave respondent's premises with Mr. Dienges until after he had completed his work for the day. I am not at all impressed by the testimony of Mr. Hoffman nor petitioner in this regard. I am convinced that the true version of the happening was given Mr. Mustard by petitioner and that his testimony respecting the manner in which he arrived on the restaurant premises is merely an afterthought.

The question in this case is whether or not the accident which petitioner suffered, while on the restaurant premises, arose out of and in the course of his employment.

In *Belyus* v. *Wilkinson, Gaddis & Co.,* 115 *N. J. L.* 43; 178 *Atl. Rep.* 181, Mr. Justice Heher, in defining a compensable accident within the purview of the Workmen's Compensation Act, stated as follows: "An accident arises 'in the course of' the employment when it occurs (a) within the period of employment; (b) at a place where the employee may reasonably be; and (c) while he is reasonably fulfilling the duties of the employment, or doing something incidental to it. It arises 'out of' the employment when the risk of such an occurrence is reasonably incident to the employment. Such a risk is one that grows out of or is connected with what a workman has to do in fulfilling his contract of service. And a risk may be incidental to the employment when it is either an ordinary risk, directly connected therewith, or one extraordinary in character, indirectly connected with the employ-

ment because of its special nature. If the danger were one to which the employee was exposed because of the nature of his employment, the accident arose out of the employment. In fine, there must be a causal connection between the conditions under which the work is required to be done and the resulting injury. The injury must have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." *Hully* v. *Moosbrugger,* 88 *N. J. L.* 161; 95 *Atl. Rep.* 1007; *Bryant, Adm'x,* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458; *Hall* v. *Doremus,* 114 *N. J. L.* 47; 175 *Atl. Rep.* 369.

Tested by this rule, the accident suffered by petitioner, when he offered his assistance to Mr. Dienges in the repair of a leaky radiator even though he may have obtained respondent's permission to leave the drugstore during his period of employment for the few minutes allowed, did not arise out of nor in the course of his employment with respondent. From the time he left respondent's drugstore, for the above stated purpose, and until his return and resumption of employment as a clerk, there was an hiatus, or temporary suspension of the employment, and an accident occurring to him during this period could not legally be charged against respondent.

Accordingly, I am constrained to hold that petitioner has failed to sustain the burden of proof in establishing a compensable accident.

It is this 16th day of May, 1944, ordered that the petition filed herein be and hereby is dismissed.

JOHN J. STAHL,
*Deputy Commissioner.*