# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### VAN HORN v. KITTITAS COUNTY.

(Circuit Court, D. Washington, W. D.  November 29, 1901.)

**1. CONTRACTS—ILLEGAL CONDITION—FEIGNED SUIT.**

A contract between a county and a bidder for an issue of its bonds, by which the county agrees to sell the bonds to the bidder on condition that he will cause a feigned suit to be brought and prosecuted to the supreme court of the state to determine the validity of the bonds prior to their issuance, the expense to be paid by the county, is an indivisible contract, and void in its entirety, because the condition precedent is contrary to public policy.

**2. FEDERAL COURTS—JURISDICTION—ALLEGATION OF JURISDICTIONAL FACTS.**

In an action in a federal court on a demand assigned to plaintiff by a partnership, an allegation in the complaint that each and all of the members of such partnership are "citizens of the state of Illinois or of the state of New York" is evasive and insufficient as an allegation of jurisdictional facts.[1]

Action at law to recover damages for breach of a contract on the part of Kittitas county to issue and sell bonds to the amount of $81,000 for funding the county debt.  Demurrer to complaint on the ground that a condition in the contract requiring the purchasers to cause a suit to be brought against the county, and prosecuted to a final determination in the supreme court of the state, for the purpose of testing the validity of the proposed bonds, was contrary to public policy, and made the contract void.  Demurrer sustained.

Stiles & Nash, for plaintiff.
Mires & Warner, for defendant.

HANFORD, District Judge.  A statute of this state authorizes any county to issue bonds to a limited amount for the purpose of

[1] Averments of citizenship to show jurisdiction of federal courts, see note to Shipp v. Williams, 10 C. C. A. 261.

112 F.—1

funding its indebtedness. See Laws 1889–90, p. 37. The complaint alleges, as the plaintiff's cause of action, that the board of county commissioners of Kittitas county, under authority conferred by the statute referred to, ordered an issue of funding bonds to the amount of $81,000, and advertised for bids for the proposed bonds; that the firm of Farson, Leach & Co. were the highest bidders, and their bid was accepted by the board, upon a condition, however, that the bidders were to provide the printed or lithographed blanks for the bonds, and cause a suit to be brought against the county, and prosecuted to a final determination in the supreme court of the state, for the purpose of testing the validity of the bonds, and that they should be bound by the decision of the supreme court, and that the expenses to be incurred in providing the printed or lithographed blanks and the cost of the proposed litigation should not exceed in the aggregate $500, which was to be paid by the county; that the bidders assented to said condition, and thereafter did provide the blanks, and did cause a lawsuit to be instituted against the county treasurer of Kittitas county, and prosecuted to a final determination in the supreme court of the state, for the purpose of testing the validity of said bonds (see Williams v. Shoudy, 12 Wash. 362, 41 Pac. 169); that thereafter the county refused to deliver the bonds to the bidders, and, in violation of its agreement, disposed of the same to other parties, receiving therefor a higher premium than had been offered by Farson, Leach & Co., who thereby suffered a loss of the expenses and costs which they had incurred, amounting to $500, and of the profits which they would have made on the transaction, amounting to $6,000, and that Farson, Leach & Co. having a claim against the county for damages to the amount of $6,500, as above stated, assigned said claim to the plaintiff. It is not shown that at the time of advertising the bonds for sale there was any dispute as to the right of the county commissioners to issue the bonds, nor as to the legality of the sale of the bonds to Farson, Leach & Co. for the amount of their bid, and it must be inferred from what is shown by the complaint that the plaintiff in the case of Williams v. Shoudy was instigated to commence the action for the accommodation of Farson, Leach & Co. and the board of county commissioners, and that all parties concerned were interested in obtaining a decision affirming the legality of the bonds.

From the allegations of the complaint, and the necessary inferences to be drawn therefrom, the contract sued upon contained a condition precedent; that is to say, the county was not obligated to issue its bonds unless Farson, Leach & Co. should first be instrumental in causing litigation, and securing a decision of the supreme court of the state affirming the validity of the bonds. The agreement, therefore, was not divisible, and, as the only obligation of the county was made dependent upon performance of the condition by Farson, Leach & Co., the contract is entirely void if performance of the condition was unlawful. The courts of this state are not required by the constitution or laws of the state to counsel or advise the county commissioners in advance as to the legality or wis-

dom of any contemplated action, and yet it has become a common practice for Eastern and foreign investors, negotiating for the purchase of county or municipal bonds, to require proceedings intended to forestall any subsequent decision by the courts of the state of questions affecting the validity of the bonds. The practice is from every point of view vicious. It involves, in the first place, a conspiracy to deceive the courts, by presenting cases for decision involving no real controversy; and, as the parties to all such fictitious litigation are united in interest, the temptation must be strong to array facts and conceal facts in such a manner as to obtain a decision advantageous or profitable to the conspirators, and at the same time forestall any fair consideration of questions affecting the validity of the bonds which real litigants may afterwards choose to controvert in the courts. The practice of bringing feigned lawsuits into court was condemned by the supreme court of the United States in the case of Lord v. Veazie, 8 How. 251, 256, 12 L. Ed. 1067, 1069, and in the opinion by Chief Justice Taney the court said:

"It is the office of courts of justice to decide the rights of persons and of property, when the persons interested cannot adjust them by agreement between themselves, and to do this upon the full hearing of both parties; and any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purpose, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended, and treated as a punishable contempt of court."

In an opinion by Chief Justice Greene, in the case of Connoly v. Cunningham, 2 Wash. T. 242, 5 Pac. 473, the supreme court of Washington Territory denounced a similar agreement to the one pleaded in this case, severely, as follows:

"Any deceit is entirely inconsistent with that perfect directness and openness which should characterize parties when they seek the intervention of their sovereign to adjust in court their difficulties. Every agreement to practice such deceit is fraudulent, against public policy, and void."

Numerous other decisions, upholding the same doctrine, are collated in 9 Enc. Pl. & Prac. p. 720.

For the reasons above stated, I consider the contract pleaded to be void, and on that ground the demurrer will be sustained. The complaint is also defective in its allegations of jurisdictional facts, in this: that the members of the firm of Farson, Leach & Co. are alleged to be each and all citizens of the United States of America, and citizens of the state of Illinois or of the state of New York. This allegation is evasive. It does not show that either member of the firm was a citizen of the state of Illinois, nor that either member of the firm was a citizen of the state of New York. If the facts warrant, this defect might be cured by an amendment, which would be permitted if the pleading showed that there was a meritorious cause of action. But as the plaintiff has already shown that the contract upon which his action is founded is entirely void, it will be useless to amend the allegations as to the citizenship of the plaintiff's assignors.