PHILIP G. MERKEL, PETITIONER-PROSECUTOR, v. T. A. GILLESPIE COMPANY, INCORPORATED, RESPONDENT.

Submitted May term, 1932—Decided September 30, 1932.

Before Justices PARKER, CAMPBELL and LLOYD.

For the prosecutor, *David Roskein.*

For the respondent, *Arthur F. Mead.*

PER CURIAM.

There are two matters before us.

Cause No. 224 is a writ of *certiorari* to review the judgment of the Court of Common Pleas of Essex county dismissing an appeal in a workmen's compensation matter, and No. 255 is a motion to dismiss the appeal to this court, in the same matter, for lack of diligent prosecution.

Dealing with the latter cause first, it might well be dismissed because of non-compliance with our rules. Proper diligence is not perfectly apparent but by our disposition of the cause, upon its merits, legal and factual, respondent is not disadvantaged by a refusal to dismiss. The motion to dismiss is therefore denied, without costs.

Directing our attention to cause No. 224 the facts are:

Merkel, the prosecutor, and others, as employes of the respondent, Gillespie & Company, were engaged in laying water mains in Jersey City. The performance of this work required the excavation of a trench and the lowering therein, and connecting up, of the pipes, length by length. A point in the work seems to have been reached where the trench was

obstructed by a tree stump which it was attempted to remove by a crane, located on the highway, and tackle attached to the stump. One Stahlberg was acting as signalman for the crane operator and he and Merkel and another or others were assigned to care for the traffic on the highway so that it would not come into collision with the crane. The tackle had, several times, been placed upon the stump but slipped each time that the crane attempted to pull. Finally, Merkel appears to have undertaken to direct Stahlberg and other employes how to arrange the tackle. This started an argument between them, during which they called each other names and finally Merkel approached Stahlberg making an attempt to hit him, which blow Stahlberg dodged and in turn he struck Merkel, knocking him down and injuring him.

Upon a hearing before a deputy commissioner of the compensation bureau, that officer found that the injuries to Merkel did not arise out of and in the course of his employment and therefore he was not entitled to an award for compensation under the Workmen's Compensation act.

Upon appeal from such finding to the Court of Common Pleas that tribunal dismissed the appeal for the same reason, citing as authority *Hully* v. *Moosbrugger*, 88 *N. J. L.* 161; 95 *Atl. Rep.* 1007; *Walther* v. *American Paper Co.*, 89 *N. J. L.* 732; 99 *All. Rep.* 263, and *Mountan Ice Co.* v. *McNeil*, 91 *N. J. L.* 528; 103 *Atl. Rep.* 912.

The facts in none of these cases present a situation identical with the case before us, but from them we think the policy of the courts of this state can clearly be discerned.

In *Hully* v. *Moosbrugger, supra,* the workman, at the time of the happening, was engaged in a work for his master and as the result of the swing of the arm of a fellow-employe, said to be in horse-play, which he attempted to dodge, he slipped and fell, receiving injuries resulting in his death. The Court of Errors and Appeals reversed an award of compensation, that court holding: "In the case at bar the employer was not charged with the duty to see to it that none of his employes assaulted any other one of them either *willfully or sportively*. And when one made such an assault upon

another he was guilty of the doing of a negligent act as an individual tort feasor, *for which his employer was not responsible.* \* \* \* The accident in this case was clearly not one within the scope of the employment of the decedent, nor was it one arising out of a risk reasonably incident to that employment.

We are of the opinion that an employer is not liable under the Workmen's Compensation act (*Pamph. L.* 1911, *p.* 134) to make compensation for injury to an employe which was the result of horse-play or skylarking, so-called *whether the injured or deceased party instigated the occurrence or took no part in it,* for, while an accident, happening under such circumstances, may arise in the *course of,* it *cannot* be said *to arise out* of the employment."

In *Walther* v. *American Paper Co., supra,* a night watchman was beaten and robbed by a fellow-employe, upon the premises of the employer and while the watchman was on duty. He died from his injury and an award of compensation was reversed by the Court of Errors and Appeals, because, inasmuch, the court said as "the assailant's purpose in going to the mill at night and hiding in it was to rob Walther, and he did not attempt any robbery from the office of the mill, or any destruction of the mill property or any mischief or crime other than the robbery of Walther \* \* \* the death of Walther did not arise out of his employment."

In *Mountain Ice Co.* v. *McNeil, supra,* McNeil was injured by a blow on the head with an ice pick, at the hand of a fellow-employe who previously had tried to pull from under McNeil a box upon which he was sitting while engaged in work. McNeil had repeatedly told him to stop and finally a scuffle ensued which was put an end to by the foreman. Subsequently the blow, causing the injury, took place. The Court of Errors and Appeals reversed an award for compensation, saying: "We think that because of the skylarking which came under the observation of the president and superintendent of the ice company's plant, namely, skylarking between those boys, charged the president and superintendent with contemplating no more than that the same thing might

occur again, that is skylarking or horse-play—*not that one boy might thereafter commit an atrocious assault upon the other.*"

In *Schmoll* v. *Weisbrod,* 89 *N. J. L.* 150; 97 *Atl. Rep.* 723, Weisbrod while delivering beer for his employer was shot by some person, unknown, and died as a result of the shooting. This court reversed an award for compensation, saying: "* * * the testimony utterly fails to show any motive for the attack upon the deceased. The assailant of the deceased was unknown. His motive in making the attack was also unknown. No robbery or attempt at robbery was shown. The person who shot the deceased might have shot him out of revenge for some fancied wrong or by mistake or by accident. There was no proven fact or circumstance before the court below that connected the shooting either directly or indirectly with the employment of the deceased as driver or collector."

In one of our earliest cases under the Compensation act (*Bryant* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458), where the workman was killed by the falling upon him of a metal bar from an upper story of a building, this court, in affirming an award of compensation, most significantly said: "It is to be observed that there is no evidence from which it might be inferred that the other workman *intentionally* caused the bar to fall on the decedent, and the presumption is to the contrary. We are, therefore, not now concerned with the question whether an employe is intentionally injured by another, it may be properly characterized as an accident as was held in *Nisbet* v. *Rayne and Burn* (1910), 2 *K. B.* 689, it being there said that the occurrence must be judged from the victim's point of view."

Appellant cites several cases in other jurisdictions which appear to hold that there may be recovery of compensation for injuries received by a workman through an assault and battery committed upon him by a co-worker.

Because of what appears to us to be the plainly displayed contrary policy of the courts of this state, by the cases to which we have referred, we do not find ourselves swayed

by the findings of other jurisdictions, and certainly not in the case before us where, as before indicated, the appellant-claimant was the aggressor.

In the well reasoned opinion of the Court of Errors of New York in *Verschleiser* v. *Joseph Stern Son, Inc.,* 128 *N. E. Rep.* 126, it is said: "The man who initiates an assault is doing a willful thing, but this cannot be said of the man who, surprised by physical assault, or insult, reacts and in self-protection strikes another." In considering the foregoing it is to be borne in mind that the courts of the State of New York recognize the right of compensation for injuries to an employe arising from attacks by co-employes. *Heitz* v. *Ruppert,* 112 *N. E. Rep.* 750; *Verschleiser* v. *Joseph Stern Son, Inc., supra; Knocks* v. *Metal Package Corp.,* 131 *N. E. Rep.* 741; *Rydeen* v. *Monarch Furniture Co.,* 148 *Id.* 527; *Fried* v. *Quinlan,* 152 *Id.* 399; *Field* v. *Charmette Knitted Fabric Co.,* 156 *Id.* 642.

In *L. R. A.* 1916, *p.* 65, it is said: "An injury received by a workman while he himself was deliberately assaulting a fellow-workman was not caused by an accident arising out of and in the course of employment."

It appears to us that the contention that a workman injured in an affray with a fellow-workman, in which he is the aggressor, cannot have compensation under the Workmen's Compensation act, is entirely logical, and in accord with the trend of judicial thought as expressed and indicated by the cases in this state.

We conclude, therefore, that the judgment under review should be affirmed and the writ dismissed, with costs.