NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

CAMPBELL LINDSAY, PETITIONER, v. HOFFMAN BEVER-
AGE CO., RESPONDENT.

Decided May 1, 1941.

For the petitioner, *Meyer Semel.*

For the respondent, *John W. Taylor.*

\*     \*     \*     \*     \*     \*     \*

The petitioner, who was employed as a service-man in the garage operated by the respondent in connection with its plant, testified that he was so employed on April 5th, 1940, and that about one-fifteen P. M. on that day he was assaulted by John Savage, another employe of the respondent, and caused to suffer certain injuries by reason of the assault. It appears from the testimony that prior to the incident of April 5th, 1940, Lindsay had been of the opinion that Savage had carried "tales" about him and his work to a Mr. Shippe, who was the foreman in charge of respondent's garage. In addition to feeling that Savage had lied about him on several occasions to Mr. Shippe, Lindsay also felt that Savage attempted to assume some authority over him when in fact Savage had no authority so far as he, Lindsay, was concerned. He stated that he had so expressed himself to Mr. Shippe and had been advised by Mr. Shippe that in the event of any misunderstanding between him and Savage he was to communicate with Mr. Shippe, who would straighten out the difficulty.

Lindsay testified that at about one-fifteen P. M. on April 5th, 1940, Savage came up to him and asked him where he had been during the morning and in reply to this query Lindsay said: "If you want an answer to this question you will have to have Mr. Machado, the garage foreman, ask me the question and I will answer the question through him." According to Lindsay one word led to another and finally he went into the office on the first floor of the garage for the purpose of calling Mr. Shippe, that his attempt to contact Mr. Shippe was unsuccessful and while so doing, Savage lost his temper and slapped him in the face causing him to fall to the floor. While he was attempting to regain his feet he saw a fellow workman, a Mr. Klok, come into the office and get between him and Savage. A Mr. Iseman also came in and intervened. He claims that while attempting to regain his feet, he was kicked in the face (indicating the right jaw) and also kicked in the back by Savage. Lindsay denied that he struck Savage at any time during the altercation although he did admit saying to Savage, "Strike me and see what you get."

Mr. John Savage testified that he was employed as a clerk in Mr. Shippe's office and that on the morning in question he had been instructed by Mr. Shippe to locate the petitioner. He stated that he searched around the plant for Mr. Lindsay for some two or three hours before he was able to locate him and when he finally located him in the garage shortly after the noon hour inquired where he had been and Lindsay immediately took offense and indicated very strongly that he felt that his whereabouts during the morning were of no concern to Savage. He said that during the course of the discussion which followed, they made their way into the office and while in the office he tried to reason with Lindsay stating that the entire matter was between the two of them and that there was no need for them to re-hash their respective grievances in the presence of anyone else. Lindsay thereupon flew into a rage and used abusive language calling Savage by uncomplimentary names and finally putting up his fists and offering to fight it out. Savage stated that he told Lindsay that he did not care to fight but when Lindsay persisted in calling him

certain "names" and flourished his fists in Savage's face indicating to Savage that he was in a position of peril, he, Savage, struck Lindsay on the right side of his face. Savage stated that he could not recall which of the two struck the first blow but that they each hit the other and during the course of the flurry of blows Lindsay fell to the floor and it was at this time that Messrs. Klok and Iseman came into the office.

Savage stated that prior to the incident of April 5th, he had an occasion to complain about Lindsay to Mr. Shippe and when Lindsay heard of this he strongly indicated his feeling towards Savage and accused Savage of lying about him to Mr. Shippe.

Mr. Klok and Mr. Iseman, who were called as witnesses for the petitioner corroborated Savage for they both testified that their attention was attracted to the office by loud voices and the sound of furniture being pushed around the office. When they entered the office, they said, they saw "fists flying" and the two men clinched together. This testimony directly contradicts the testimony of Lindsay for Lindsay denied striking Savage.

Mr. Joe Palmer, who testified for the respondent, related incidents leading up to the occurrence. He saw a fist fly and Lindsay fall but was vague as to all that took place as he was approximately fifty feet away.

Mr. Shippe, the garage foreman, likewise corroborated Savage's testimony, for he stated that sometime shortly prior to the altercation of April 5th Lindsay had accused Savage, in his presence, of complaining and lying about his work to Mr. Shippe.

The paramount issue in the case was whether or not Lindsay suffered injury by reason of an accident arising out of and in the course of his employment by the respondent company.

In *Hulley* v. *Moosebrugger,* 88 *N. J. L.* 161; 95 *Atl. Rep.* 1007, the Court of Errors and Appeals held that an employer was not liable under the Workmen's Compensation act where one of his employes, in a spirit of play, swung his arm around at another employe, either to knock off his hat or to strike him, whereupon that employe, in dodging the attack slipped

on a concrete floor, fell and sustained injuries which caused his death. The court held that an employer was not liable under the Workmen's Compensation act to pay compensation for injury to an employe which was the result of horse-play or sky-larking for while an accident happening under such circumstances may arise in the course of, it cannot be said to arise out of the employment. There was no evidence in that case that the employer had any knowledge of prior sky-larking on the part of any of his employes or that he had any opportunity to prevent the occurrence.

In *Mountain Ice Co.* v. *McNeil*, 91 *N. J. L.* 528; 103 *Atl. Rep.* 184, the employe, McNeil, was struck on the head with an ice-pick by a fellow employe, and sustained injuries for which he brought suit under the Workmen's Compensation act against his employer. On the day of the occurrence the employes had been working together in an icehouse and a fellow employe had tried several times to pull from under McNeil a box upon which he sat while engaged in work. This finally ended in a scuffle during which the president and foreman of the ice company came in and saw what was going on. He ordered both boys back to work and they complied. Later on the fellow employe struck McNeil a blow on the side of the head with an ice-pick, injuring him. An award was made in the Workmen's Compensation Bureau in favor of McNeil as against his employer and this was affirmed by the Supreme Court on the ground that the accident to McNeil arose out of and in the course of his employment based on the theory that the master had knowledge of what was transpiring between the two boys and ordered them back to work, and that therefore it clearly could be said that what did happen was a result reasonably within the contemplation of the master and incidental to the employment under the existing circumstances. The Court of Errors and Appeals reversed the Supreme Court on the ground that the injury was the result of an atrocious assault and that the employer did not have any knowledge that such a situation was likely to occur. The court said: "We think that, because of the sky-larking which came under the observation of the president and the superintendent of the ice company's plant, namely sky-larking between those

boys, charged the president and the superintendent with contemplating no more than that the same thing might occur again, that is sky-larking or horse-play—not that one boy might thereafter commit an atrocious assault upon the other." The Court of Errors and Appeals further said: "This case is entirely unlike the *McNichols Case, 215 Mass.* 497, cited in Hulley *v.* Moosebrugger (at *p.* 163), for there it was held that injuries resulting in the death of an employe while doing work from blows or kicks given him by a fellow workman in an intoxicated frenzy and passion, such fellow workman being known by the superintendent to have the habit of drinking to intoxication, and when in that condition to be quarrelsome, dangerous and unsafe to work with, was knowingly permitted to work on the day of the injury while in such condition of intoxication, and it was held that the injury thus received arose out of and in the course of the workman's employment; while here the only propensity which was discovered to the officers of the company by the conduct of the boys was that one or both were likely to engage in sky-larking or horse-play, a thing which most, if not all, boys do, without any resulting criminal assault, and without contemplation of such result by anyone—adult or infant."

In the McNichols case, Chief Justice Rugg, speaking for the court, said: "The first question is whether the deceased received an injury arising out of and in the course of his employment within the meaning of those words * * * in part 2 of the act. In order that there may be recovery, the injury must both arise out of and also be received in the course of the employment. Neither, alone, is enough."

Likewise in *Bryant* v. *Fissel,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, the Supreme Court of this state held that it is not alone sufficient that the injury be received by the employe in the course of his employment, stating that it must also arise out of the employment.

In *Merkel* v. *T. A. Gillespie Co., Inc.,* 10 *N. J. Mis. R.* 1081; 162 *Atl. Rep.* 250, it appears that the petitioner and another were engaged as employes of Gillespie & Company in laying water mains in Jersey City. Merkel appears to have undertaken to direct one Stahlberg and other employes as to

how to do certain work. This started an argument between them during which they called each other names and finally Merkel approached Stahlberg making an attempt to hit him, which blow Stahlberg dodged and in turn he struck Merkel, knocking him down and injuring him. The petition was dismissed by the deputy commissioner and this determination was affirmed by both the Court of Common Pleas and the Supreme Court. The Supreme Court in a *per curiam* opinion in *Merkel* v. *T. A. Gillespie Co., Inc., supra,* said: "Appellant cites several cases in other jurisdictions which appear to hold that there may be recovery of compensation for injuries received by a workman through an assault and battery committed upon him by a co-worker.

"Because of what appears to us to be the plainly displayed contrary policy of the courts of this state, by the cases to which we have referred, we do not find ourselves swayed by the findings of other jurisdictions, and certainly not in the case before us where, as before indicated, the appellant-claimant was the aggressor.

"In the well reasoned opinion of the Court of Errors of New York in *Verschleiser* v. *Joseph Stern Son, Inc.,* 128 *N. E. Rep.* 126, it is said: 'The man who initiates an assault is doing a willful thing, but this cannot be said of the man who, surprised by physical assault, or insult, reacts and in self-protection strikes another.' In considering the foregoing it is to be borne in mind that the courts of the State of New York recognize the right of compensation for injuries to an employe arising from attacks by co-employes. *Heitz* v. *Ruppert,* 112 *N. E. Rep.* 750; *Verschleiser* v. *Joseph Stern Son, Inc., supra; Knocks* v. *Metal Package Corp.,* 131 *N. E. Rep.* 741; *Rydeen* v. *Monarch Furniture Co.,* 148 *Id.* 527; *Fried* v. *Quinlan,* 152 *Id.* 399; *Field* v. *Charmette Knitted Fabric Co.,* 156 *Id.* 642.

"In *L. R. A.* 1916, *p.* 65, it is said: 'An injury received by a workman while he himself was deliberately assaulting a fellow workman was not caused by an accident arising out of and in the course of employment.'

"It appears to us that the contention that a workman injured in an affray with a fellow workman, in which he is

the aggressor, cannot have compensation under the Workmen's Compensation act, is entirely logical, and in accord with the trend of judicial thought as expressed and indicated by the cases in this state."

I have carefully considered the testimony and having had an opportunity to observe the witnesses and particularly the parties to the altercation I am convinced that the incident was invited by Lindsay and was entirely of his own doing. Lindsay employed as an auto servicer also acted in the capacity of shop steward. My observation of the petitioner lead me to believe him as an individual quick tempered and pugnacious, whereas Savage is a graduate engineer, studious in appearance and this is corroborated by the fact that after being graduated from college he continued to take courses in order to advance himself in his profession and at the present time he is employed by the Tidewater Oil Company in a very responsible position. His quiet manner and demeanor on the witness stand has convinced me that he was not the aggressor.

I strongly believe that Lindsay resented any thought that Savage, a younger man than he, had some appearance of authority and that when he was questioned by Savage respecting his whereabouts, evidenced that resentment in the way he was accustomed to expressing his feelings when things were not to his own liking, that is, by using loud and abusive language, by name-calling, and by flourishing his fists. I am further convinced that he was not stating the truth when he said that he did not strike Savage, for this testimony of his is contradicted by his own witnesses as well as by Savage.

It is not only true as expressed by the cases above that an injury received by a workman while he himself was deliberately assaulting another is not an injury caused by an accident arising out of and in the course of the employment, but it is also true that, where a workman deliberately provokes another into assaulting him by reason of abusive and threatening language and threatening gestures and as a result thereof suffers injury, such injury is not caused by an accident arising out of and in the course of the employment. Lindsay, I find, was injured in an affray with a fellow workman in which

affray he was the aggressor and under the settled law of this state I find that he did not suffer injury by reason of an accident arising out of and in the course of his employment by the respondent company.

Finding as I do that the petitioner, Lindsay, has failed to prove a cause of action within the terms and provisions of the Workmen's Compensation act of this state and that he has failed to prove by competent testimony that he suffered injury by reason of an accident arising out of and in the course of his employment, it is hereby ordered * * * that the petition be and hereby is ordered dismissed.

JOHN C. WEGNER,
*Deputy Commissioner.*