NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

CHARLES MAYES, PETITIONER, v. WALTER KIDDE CON-
STRUCTORS, INC., AND LIBERTY MUTUAL INSURANCE
COMPANY, RESPONDENT.

Decided December 24, 1942.

For the petitioner, *David Roskein* (by *Mortimer Wald*).

For the respondent, *John W. Taylor* (by *Richard W. Tun-stead*).

\*       \*       \*       \*       \*       \*       \*

From the stipulation of counsel and the testimony adduced, it appears that the facts in this case are not seriously in dispute. The petitioner was in the employ of the respondent on June 8th, 1942, as a laborer and was receiving wages which would entitle him to a compensation rate of $20 a week. On that date at about 12:30 P. M., the petitioner was engaged in the performance of his duties for the respondent as a buggy pusher. His job was to fill a buggy with concrete at a concrete mixer and push the filled buggy to some portion of the premises where the concrete was to be poured. These buggies, which were used not only by the petitioner but by several other employees, as well, were the property of the respondent. They were not all identical and some were in better condition that others; that is, some were easier to handle and manipulate, depending upon the condition of the wheels and of the structure holding same.

One of the respondent's employees, Henry Moore, was the caretaker of the equipment used on the job by the laborers and among his duties he was required to and did look after the buggies and saw to it that they were kept in good working condition, as well as to store them in a shed when they were not in use. The proofs indicate that on June 8th, 1942, the petitioner following lunch resumed his work with a buggy which he learned after a brief period of use to be other than the one which he had been using that morning. This became manifest in that the second buggy was not in as good working condition due to some defect in the wheel, as was the one which he had been using previously. The petitioner, after emptying same of concrete, set it aside and selected one which appeared to him to be in better condition. He thereupon attempted to proceed with the performance of his duties under the foreman's orders. Upon observing this substitution, the said caretaker, Henry Moore, stopped the petitioner, grabbed the handle of the buggy and insisted that the petitioner leave it until he first washed out the buggy which he had just abandoned. Then ensued a tussle with each of the men pulling back and forth on the handles of the buggy. During the course thereof, a fellow employee, Mitchell Hall, and later Marshall Jones, the shop steward, intervened and urged both men to continue with their work. Marshall Jones offered to wash the buggy himself. In passing, it should be observed that the assailant, Henry Moore, when he testified at the hearing, stated he did not recall that these two men attempted to intervene.

The dispute over the buggy apparently ended with the same in the petitioner's possession and he proceeded to roll same for a distance towards the concrete mixer, evidently in the resumption of his work. As the petitioner stood by the concrete mixer, Henry Moore assailed him and struck the petitioner on the back of his head with a shovel, causing him to fall to the ground unconscious. The only explanation advanced by the assailant, Henry Moore, for this assault was that he was "mad."

Petitioner was at once removed to St. Barnabas Hospital where he remained until June 15th, 1942. There, a diagnosis

of a cerebral concussion and laceration of the forehead was made. Thereafter, the petitioner was temporarily disabled for a period of ten weeks, following which he attempted to and did perform work for the Otis Elevator Company, but due to the headaches and dizziness which he suffered following the accident, he was unable to continue at his job.

On behalf of the petitioner, Dr. Baeder, an interne at the St. Barnabas Hospital, testified that he received a history of the petitioner being struck on the head with a shovel. The petitioner, during preliminary questioning at the hospital, exhibited considerable difficulty in remembering what happened to him after the blow. Moreover, while in the emergency room, the petitioner lapsed into sleep from which it was difficult to arouse him. It was the doctor's impression that the petitioner was suffering from a cerebral concussion. Dr. M. W. Bergman also testified on behalf of the claimant. He first examined the petitioner on July 9th, 1942, and reached the medical conclusion that the petitioner was suffering from a cerebral concussion, laceration of the left frontal area and contusions of the right occipital region with subsequent post-concussion complications. He re-examined the petitioner on October 23d, 1942, at which time he found slight changes in his condition and estimated the petitioner's disability to be $12\frac{1}{2}\%$ partial permanent total.

On behalf of the respondent, Dr. Jack Blumberg testified. At the time of his examination, he found the petitioner tense, anxious and suffering from an exaggeration of the tendon reflexes, tremors and corneal hypaesthesia. In his opinion, the petitioner was suffering from a permanent disability of 3 to 5% of total if there was a history of unconsciousness.

The disputed question is whether or not, from the facts disclosed by the evidence, the petitioner can be said to have met with an accident that arose out of and in the course of his employment. That the petitioner's disability flowed from injuries which he received as the result of a deliberate assault committed upon him while he was in the performance of his required duties, does not, under the adjudicated cases, deprive him of the right to compensation therefor. *Emerick* v. *Slavonian Greek Catholic Union*, 93 *N. J. L.* 282; 108 *Atl.*

Rep. 223; *King* v. *Camden Paving Co.,* 17 *N. J. Mis. R.* 762; 168 *Atl. Rep.* 167; *Barrese* v. *Standard Silk Dyeing Co.,* 110 *N. J. L.* 565; 166 *Atl. Rep.* 179; *Paterson* v. *S. S. Thompson, Inc.,* 12 *N. J. Mis. R.* 4; 169 *Atl. Rep.* 338. Nor does the fact that the assault was intentionally committed alter the situation so far as the injured employee is concerned. Even in such an event, upon a showing that he was in the course of the performance of his work and could not be said to be the aggressor, it is now well established that he sustained an accident arising out of and during the course of his employment. *Foley* v. *Home Rubber Co.,* 89 *N. J. L.* 474; 99 *Atl. Rep.* 624; *Winter* v. *U. S. Gypsum Co.,* 20 *N. J. Mis. R.* 425; 28 *Atl. Rep.* (*2d*) 545; *Geltman* v. *Reliable Linen and Supply Co.,* 128 *N. J. L.* 443; 25 *Atl. Rep.* (*2d*) 894. On the other hand, where the assault is the result of horseplay (*Powers* v. *Y. M. C. A. of Bayonne,* 17 *N. J. Mis. R.* 261; 8 *Atl. Rep.* (*2d*) 189; *Hulley* v. *Moosbrugger,* 88 *N. J. L.* 161; 95 *Atl. Rep.* 1007), or where the assault is motivated from purely personal causes (*Yoshida* v. *Nichols,* 12 *N. J. Mis. R.* 197; 170 *Atl. Rep.* 824), or where the injured employee is the aggressor (*Merkel* v. *Gillespie Co.,* 10 *N. J. Mis. R.* 1081; 162 *Atl. Rep.* 250), compensation is to be denied.

From the testimony adduced, it appears that there existed no animosity between the petitioner and his assailant prior to the date of the assault. Nor was there any showing that the unprovoked assault found its inception in the spirit of horseplay nor by reason of any act of aggression on the part of the petitioner. The requirements of their employment was such that they were obliged from time to time to come in close proximity with each other and on occasions, handle the same equipment. That the incident which culminated in the assault had to do with the subject-matter of their employment and the performance by each of the men of the work for which they were hired, appears so clear as to permit of no dispute. That each of these two men, however misguided they may have been, believed that the efficient and proper performance of their work for a common master, warranted the tussle over the buggy is a conclusion, which

in my opinion the evidence supports. It cannot be said that such clashes between fellow workers are not entirely unanticipated, especially in these days of stress when men's nerves become frayed and tried. The employer takes his employees with their varying temperamental dispositions and explosive nervous propensities as well as physical infirmities. *Gorman* v. *Miner-Edgar Chemical Corp.*, 16 *N. J. Mis. R.* 170; 189 *Atl. Rep.* 404.

From the testimony adduced and an application of the legal principles pertaining to the facts as I find them, I hereby find and determine that the petitioner did sustain an accident arising out of and in the course of his employment with the respondent.

\*          \*          \*          \*          \*          \*          \*

It is, \* \* \* ordered, that judgment be entered in accordance with the above.

HARRY S. MEDINETS,
*Deputy Commissioner.*