46 N.J. Super. 425 (1957)
134 A.2d 789
FAY J. MARTIN, PETITIONER-RESPONDENT,
v.
SNUFFY'S STEAK HOUSE, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1957.
Decided October 2, 1957.
*427 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Frank Fink argued the cause for appellant (Mr. James J. Carroll, attorney).
Mr. Mortimer Wald argued the cause for respondent (Messrs. Ard & Barbieri, attorneys; Mr. Wald, on the brief).
*428 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Petitioner obtained an award of 20% of partial total disability (orthopedic) in the Workmen's Compensation Division for an injury suffered in an altercation with a fellow-employee. The County Court sustained the award and respondent employer appeals, claiming that petitioner was the initial aggressor and therefore not entitled to recover under the Workmen's Compensation Act.

I.
Petitioner was a waitress in respondent's employ. During the busy dinner hour on Election Day evening, November 8, 1955, she had gone into the kitchen to pick up an order of steak and onions. The onions were missing from the plate. She asked the chef to complete the order; he said he had filled it, and began to shout at her, using profane and indecent language. Petitioner went to the manager to complain but did not find him in his office. She returned to the kitchen and found him talking to the chef. When she began to tell the manager of the chef's abuse the latter resumed his vile and abusive language. She testified that he could be overheard by customers sitting at a bar nearby; she became embarrassed and excited, and attempted to slap the chef's face (she was not sure if she actually did). He retaliated by hitting her with such force that she was thrown against the kitchen refrigerator, her back striking the protruding door handle. Another waitress testified that petitioner did not swing first, but it was the chef who delivered the first slap. The chef denied having used profane or indecent language, or that he struck petitioner. However, a waitress who testified for respondent contradicted him and corroborated petitioner; she said the chef had used abusive language and hit petitioner, but it was petitioner who struck the first blow. The manager was not called as a witness by either side; it appears he was somewhere in Florida and could not be located at the time of the hearing.
*429 Petitioner was discharged from respondent's employ immediately after the altercation. She worked in another restaurant for about five days but was forced to discontinue because of severe pains in her lower back and right leg. She saw an orthopedic surgeon on November 21. He at once sent her to the hospital where she was given traction treatment for a ruptured disc for a period of nine days. The pains persisted after her discharge, so that on December 5 she was readmitted to the hospital and an operation performed for removal of a herniated disc. Petitioner now complains of pain in her lower back, numbness in her leg and loss of normal physical function in the ordinary pursuits of life.
There was testimony that petitioner had twice before complained of back ailments, once in February 1955 and again in July 1955, when she had back pains as a result of lifting heavy trays. She was out of work two days on the first occasion, but required no medical attention; she was away from work only one day on the second occasion after making a single visit to the doctor. Her pains then were different from those resulting from the altercation in question: she had had only temporary back pain, it was not intense, and there was no involvement of the leg. The orthopedic specialist who operated on petitioner testified that the herniated disc and petitioner's condition were causally related to the incident of November 8, 1955. Another doctor, who examined her shortly after the operation, testified to causal relation upon the basis of a hypothetical question, and fixed disability at 30% of total. Respondent's medical expert, who had also examined petitioner, testified in answer to a hypothetical question and on the basis of the hospital record showing that degenerated material had been removed during the operation, that the disc rupture had occurred at least three months before the day of the incident with the chef.
The County Court, as had the deputy director, found as a fact that petitioner sustained an injury which arose out of and in the course of her employment, and that even assuming the existence of prior pathology, she would be *430 entitled to compensation for the end result. They also found that petitioner was not the aggressor, but assuming she was initially, the chef had used more force to repel the aggression than was necessary, thereby making him the aggressor. It seems clear from the opinions filed in the Division and by the County Court that both tribunals completely disbelieved the chef's testimony.

II.
Respondent contended before the two lower tribunals that petitioner's disabling back pathology preexisted the date of the fracas with the chef, and did not result from the alleged accident. While respondent does not present this argument as part of its statement of questions involved, as required by R.R. 1:7-1(c), and nowhere expressly urges it as a ground for reversal, its brief makes repeated allusions to the preexisting condition. We dispose of the matter in order to present a clear field for discussion of the one point expressly urged on this appeal, namely, whether or not the facts show that petitioner was the aggressor, thereby disentitling her to compensation benefits.
Both of the lower tribunals decided that the blow inflicted when petitioner's back hit the refrigerator handle was the immediate cause of the herniated disc. We find that the fact she had on two prior occasions suffered from temporary back pains does not preclude recovery. The mere preexistence of a related pathology does not bar compensation. It is familiar law that in cases of injury from accident arising out of and in the course of the employment, the employer takes the employee as he finds him, with all his existing disabilities and weaknesses. The employee is entitled to compensation "for all the consequences flowing freely and naturally from his accidental injury, irrespective of the fact that such consequences may be much more severe by reason of his pre-existing condition or defect." Giambattista v. Thomas A. Edison, Inc., 32 N.J. Super. 103, 114 (App. Div. 1954).
*431 We accord great weight to the factual findings of the County Court and will not reverse them unless satisfied from our reading of the record that the interests of justice so require. Augustin v. Bank Bldg. & Equip. Corp., 44 N.J. Super. 242, 243 (App. Div. 1957); Donofrio v. Haag Bros., Inc., 10 N.J. Super. 258, 262-3 (App. Div. 1950). We conclude that the County Court's finding that the injury was due to petitioner's back hitting the refrigerator handle is amply supported by credible evidence.

III.
We turn now to respondent's contention that petitioner is not entitled to compensation benefits because she was the initial aggressor. The argument runs that the chef's offensive language was merely a "provocation," not an "aggression" so as to transform him into an aggressor, in the language of Gerard v. American Can Co., 32 N.J. Super. 310, 315 (App. Div. 1954); Sanders v. Jarka Corp., 1 N.J. 36 (1948). Petitioner having struck the first blow, she cannot, within the direct holdings of Merkel v. T.A. Gillespie Co., Inc., 10 N.J. Misc. 1081, 162 A. 250 (Sup. Ct. 1932), and Lindsay v. Hoffman Beverage Co., 19 N.J. Misc. 356, 19 A.2d 824 (W.C.B. 1941), have compensation. Respondent claims that this view is strengthened by what was said in Cierpial v. Ford Motor Co., 16 N.J. 561, at page 566 (1954):
"Where the assault is the result of horseplay, Hulley v. Moosbrugger, 88 N.J.L. 161 (E. & A. 1915); Mountain Ice Co. v. McNeil, 91 N.J.L. 528 (E. & A. 1917); or where the assault was actuated by personal causes, Yoshida v. Nichols, 12 N.J. Misc. 197 (Sup. Ct. 1934); Giles v. W.E. Beverage Co., 133 N.J.L. 137 (Sup. Ct. 1945), affirmed 134 N.J.L. 234 (E. & A. 1946); or where the injured employee is the aggressor, Merkel v. T.A. Gillespie Co., Inc., 10 N.J. Misc. 1081 (Sup. Ct. 1932); or where the employee provokes the assault, Lindsay v. Hoffman Beverage Co., 19 N.J. Misc. 356 (Dept. of Labor 1941), compensation is properly denied." (Italics respondent's.)
It should immediately be noted that the statement about non-recovery where the claimant is the aggressor was dictum.
*432 Respondent does not deny that the accident arose "in the course of" the employment, but strongly urges that it did not arise "out of" the employment.
We are of the opinion that petitioner's injury arose out of her employment, within the liberal interpretation given the Workmen's Compensation Act by such cases as Sanders v. Jarka Corp., above, 1 N.J. 36 (1948); Gargiulo v. Gargiulo, 13 N.J. 8 (1953); Green v. DeFuria, 19 N.J. 290 (1955); and particularly Secor v. Penn Service Garage, 19 N.J. 315 (1955), affirming 35 N.J. Super. 59 (App. Div. 1955). A compensable accident arises out of the employment when the risk is "reasonably incident" thereto. Bryant, Adm'x., v. Fissell, 84 N.J.L. 72, 76 (Sup. Ct. 1913); Belyus v. Wilkinson, Gaddis & Co., 115 N.J.L. 43, 47 (Sup. Ct. 1935), affirmed 116 N.J.L. 92 (E. & A. 1936). It has repeatedly been said that if the employment is a contributing cause, the accident arises out of it; it need not be the sole or proximate cause, so long as it is a necessary factor leading to the accident. Cierpial v. Ford Motor Co., above, 16 N.J. at page 566 (1954).
There is no question but that the dispute arose between petitioner and the chef over the performance of their respective duties on behalf of respondent. The chef was 6'2" tall and weighed 225 pounds, and from the testimony it can fairly be said that his manner toward petitioner and other waitresses was somewhat less than genteel. Petitioner weighed only half as much as the chef. The physical arrangement of respondent's place of business was such that the loud and indecent language he used could be heard, or at least petitioner so believed, by patrons sitting at the bar near the kitchen. We can accept as a fact that there were not only physical differences between petitioner and the chef, but also mental and emotional differences. The pattern of our society remains such that it may reasonably be expected, and quite often happens, that a woman will halt a flow of offensive language and insults by slapping the man's face. Such an act has never been considered as one which would provoke a state of open warfare.
*433 Petitioner's slap when the chef resumed his offensive talk was simply a reflex action. It was instinctive and impulsive, as spontaneous as it was unpremeditated. It was natural conduct in the circumstances, a quick slap that was to be expected, and not such an act as should be considered a totally separate entity and labeled aggression.

IV.
This case, however, should be dealt with in its larger aspect. Respondent contended at the oral argument that to say petitioner was not the aggressor because she reacted impulsively and spontaneously to the chef's foul language and name-calling, is to resolve the issue on too narrow a basis. Respondent claims that petitioner was an out-and-out aggressor, and its argument proceeds from that premise. Petitioner's answering brief says that even so, she is entitled to compensation, and insists that the so-called "aggressor defense," if it in fact exists in New Jersey, should not bar recovery.
The common law concept of tort liability based on fault, which once controlled the determination of liability for death or injury in employment, was wiped out when the Workmen's Compensation Act was passed in 1911. However, it has taken considerable time to eliminate the tort concepts which affected judicial thinking in the field of workmen's compensation, particularly in assault, horseplay (skylarking) and curiosity cases. Compare, for example, the pattern of judicial thinking found in Hulley v. Moosbrugger, 88 N.J.L. 161 (E. & A. 1915) (compensation denied to an employee who was injured and died when he tried to dodge a fellow employee's playful swing of the arm), where the court said:
"* * * the employer was not charged with the duty to see to it that none of his employes assaulted any other one of them, either willfully or sportively. And when one made such an assault upon another he was guilty of the doing of a negligent act as an individual tort-feasor, for which his employer was not responsible. * * *

* * * * * * * *
*434 We are of the opinion that an employer is not liable * * * to make compensation for injury to an employe which was the result of horse-play or sky-larking, so called, whether the injured or deceased party instigated the occurrence or took no part in it * * *." (88 N.J.L. at pages 168, 169)
with Secor v. Penn Service Garage, above, 19 N.J. at pages 320-321, where Justice Jacobs, discussing the Hulley result, declared:
"* * * The great weight of authority is now to the contrary; indeed the trend has been toward allowing compensation even to participating employees where their deviations may be said to be minor and attributable to normal human tendencies which men do not wholly shed simply because they are at work. * * *"
As has so often been said, our Workmen's Compensation Act is remedial social legislation, designed to place the costs of accidental, work-connected injuries upon employers, who may readily provide for them as part of their operating expenses through insurance or by self-insurance reserves. The act provides in broad language that compensation shall be paid for death or injury by accident arising out of or in the course of employment "in all cases except when the injury or death is intentionally self-inflicted, or when intoxication is the natural and proximate cause of injury. * * *" R.S. 34:15-7. These are the only two stated exceptions. The court in Secor pointedly remarked that
"* * * The common law concept of liability based on fault is nowhere mentioned in the act and has no proper place in its administration; on the contrary the act is to be liberally applied as a compensation statute intended to protect employees in the event of work-related injuries notwithstanding their own negligent or even foolhardy conduct. * * * Similarly the act nowhere either in terms or purpose, embodies the common law concept of proximate causation; on the contrary it is enough if the employment is a contributory cause. * * *" (19 N.J. at page 319)
To this we may add that nowhere in the act is there language which deprives an employee of the right to receive *435 compensation for a work-connected injury where he impulsively and spontaneously delivers the first blow, be it grave or merely minor.
The cases dealing with sportive and malicious assaults, and with the question of whether an injured party should be denied compensation because he was the aggressor, present a mass of contradictions and inconsistencies. They are exhaustively reviewed in Horovitz, "Assaults and Horseplay Under Workmen's Compensation Laws," 41 Ill. L. Rev. 311, 325-367 (1946); Small, "The Effect of Workmen's Compensation Trends on Agency-Tort Concepts of Scope of Employment," 11 N.A.C.C.A.L. J. 19, 26 et seq. (1953); and in 15 N.A.C.C.A.L. J. 29-44 (1955) (where Horovitz brings his Illinois Law Review article up to date), and Larson, Law of Workmen's Compensation, § 11.00 et seq., p. 109 et seq. (1952), and Cum. Supp. (1957).
At the time Larson's work was published in 1952 it could be said that most jurisdictions denied compensation if the claimant himself was the aggressor. Op. cit., § 11.15, p. 121 et seq. However, as Horovitz has shown, aggressors were getting awards by indirection, by reason of courts either (1) being silent on the issue  simply finding that the argument arose out of the work and was not purely personal, ignoring the troublesome question of aggressors or participators; or (2) finding that the aggression had ceased, and the co-employee was the real culprit; or (3) engaging in hairline distinctions and finding that the injured party was in fact not the aggressor, despite the fact he was the first either to curse or use his fist; or (4) regarding the one who really did the damage as the aggressor, and ignoring the injured man's minor prior derelictions. Cases falling within these award categories are to be found in 15 N.A.C.C.A.L.J., at pages 38-39 (1955), and 41 Ill. L. Rev. 359-361 (1946).
The tide of judicial thinking was turned by the able opinions written by Justice (later Chief Justice) Kenison of New Hampshire, in Newell v. Moreau, 94 N.H. 439, 55 A.2d 476 (Sup. Ct. 1947), and by Chief Justice Qua of *436 Massachusetts, in Dillon's Case, 324 Mass. 102, 85 N.E.2d 69 (Sup. Jud. Ct. 1949). They chose to face the aggressor defense issue directly: their cogent reasoning made their decisions leading cases and helped turn the weight of authority, and certainly the weight of reason, in favor of compensating the aggressor injured in a work-connected assault.
In Newell v. Moreau, the court said:
"* * * The defense of `aggressor' is not to be found in our statute or in other compensation laws. By the application of tort reasoning the defense has been judicially inserted in some compensation cases. * * * [W]e see no reason for its judicial insertion in this assault. * * *" (94 N.H. at pages 442-443, 55 A.2d at page 479)
and
"Stated in over simplified terms the effect of defendant's argument is that plaintiff was hired to work and not to fight and that this was willful misconduct precluding recovery under the statute. While this argument has an appealing quality to it, it has not been followed in analogous cases and it proves too much. Employees are also hired to work and not to scuffle, commit batteries or engage in horseplay (Maltais v. Equitable Life Assur. Soc., 93 N.H. 237, 40 A.2d 837), nor to depart from the work routine to make a personal purchase of tobacco (Whitham v. Gellis, 91 N.H. 226, 16 A.2d 703), nor to make other departures from the hired work. Gallienne v. Becker Bros. Shoe Co., 88 N.H. 375, 190 A. 274. Yet, in all these cited cases compensation or recovery was allowed because it was such conduct of employees as could be reasonably expected and therefore was adjudged incidental to the employment. The inevitable result of associating men together in work is the same stress and strain that affect human mortals generally. Arguments, horseplay and some deviation from the planned schedule are bound to occur: they are compensable (and not necessarily considered willful) when related to the work. That an assault may arise from an argument, is to be expected as much as that a battery will occur from horseplay. There is no logical reason for recovery in one case and denial in the other so long as the injury or death is the result of the employment * * *." (94 N.H. at pages 444-445, 55 A.2d at page 481)
The court in Newell referred to the decision of Judge (later Supreme Court Justice) Rutledge in Hartford Accident & Indemnity Co. v. Cardillo, 72 App. D.C. 52, 112 F.2d *437 11 (C.A.D.C. 1940), certiorari denied 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415 (1940), considered a landmark case in the law of assaults. Although claimant in that case did not strike the first blow (he merely called his assailant a vile name, which the court held did not amount to aggression), what Judge Rutledge had to say influenced many courts in their treatment of the aggressor defense. He observed that
"Some courts regard aggression in physical attack as in itself a departure from the work. * * * Others do not regard it so, if the antecedent quarrel arises over the work, or unless the aggression is of the type specified in the statutory exceptions. * * * Natural repulsion toward rewarding intentional misconduct accounts largely for the difference, though it ignores the fact that one purpose of the statute is sustenance of the misbehaving employee's family during his disability and their dependence is not the less because the misconduct is his rather than another's. It appears, with the exception stated, also to disregard the fact that many statutes clearly contemplate compensation for injuries caused by misconduct of the claimant which goes beyond negligence, contributory or exclusive." (112 F.2d at pages 16-17, notes 15-17)
Speaking of the view which concerns itself, not with whether the claimant was the aggressor, but rather with whether the dispute arose immediately over the work or about something else, he said:
"This view recognizes that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly line or in traffic. Others initiated outside the job are magnified to the breaking point by its compelled contacts. No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, involves a lapse from duty, or contains an element of volition or illegality does not disconnect it from them nor nullify their causal effect in producing its injurious consequences. Any other view would reintroduce the conceptions of contributory fault, action in the line of duty, nonaccidental character of voluntary conduct, and intervening cause as applied in tort law, which it was the purpose of the statute to discard." (112 F.2d at page 17)
*438 In Dillon's Case claimant and his fellow-worker Kenny had been quarrelling for some time because the latter believed he was being worked too hard. When Kenny stepped on top of a pallette which Dillon was about to raise, Dillon told him to get off. An exchange of blows followed. Compensation was denied because it was found that claimant struck the first blow. The Supreme Judicial Court of Massachusetts reversed, Chief Justice Qua stating:
"* * * The striking of the first blow is not the sole and ultimate test as to whether the injury arose out of the employment. We think it is possible for an injury to arise out of the employment in the broad sense of the workmen's compensation law (G.L. [Ter. Ed.] c. 152, § 26, as most recently amended by St. 1945, c. 623, § 1), even though the injured employee struck the first blow. We must constantly remind ourselves that in compensation cases fault is not a determining factor, whether it be that of the employee alone or that of the employee contributing with the fault of others, unless it amounts to the `serious and willful misconduct' of the employee which by § 27, as appearing in St. 1935, c. 331, bars all relief to him. Apart from serious and willful misconduct, the question is whether the injury occurred in the line of consequences resulting from the circumstances and conditions of the employment, and not who was to blame for it. * * * So even where the employee himself strikes the first blow, that fact does not break the connection between the employment and the injury, if it can be seen that the whole affair had its origin in the nature and conditions of the employment, so that the employment bore to it the relation of cause to effect. * * * [W]hen the accumulated strain finally breaks down resistance, it seems a narrow treatment of the problem to determine the granting or denying of compensation by the more or less fortuitous circumstance of who aimed the first blow. * * *" (324 Mass. at pages 106-107, 85 N.E.2d at pages 71-72)
The next court to discard the aggression defense was the California Supreme Court in State Compensation Insurance Fund v. Industrial Accident Comm., 38 Cal.2d 659, 662-663, 242 P.2d 311, 313-314 (1952), a strong decision wherein the court quoted with approval from the Cardillo case, above, where Judge Rutledge observed that courts must recognize that the general working environment
"* * * includes associations as well as conditions, and that associations include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their *439 personal qualities when they go to work. * * * In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flare-up. Work could not go on if men became automatons repressed in every natural expression. * * * These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment." (112 F.2d at page 15)
New York has also rejected the aggressor defense, Commissioner of Taxation and Finance v. Bronx Hospital, 276 App. Div. 708, 97 N.Y.S.2d 120 (App. Div. 1950), whose language is immediately pertinent to our views:
"* * * A playful punch, an angry word, an impulsive blow is not what the Legislature intended to punish, by depriving workers of compensation. Courts are not justified in reading into the compensation act discarded principles of the common law in order to relieve industry of a liability and place it on the worker.

* * * * * * * *
In the case before us we think it is entirely immaterial whether decedent be viewed as the aggressor or the innocent victim. Our statute contains no defense that an `aggressor' or `participant' is to be denied recovery in horseplay cases or those of malicious assaults. Its insertion is purely judicial, justified by no legislative fiat, and sustained only by the court's conclusion that culpable persons should not benefit by their own wrong  the very defense that the compensation act rejects. Negligence or guilt or assumption of risk are all banned as defenses in our compensation law. The victim of work-induced assaults should be given compensation rights, without importing narrow common-law rules barring an aggressor, and without indulging in mental gymnastics to determine who struck the first blow. Using the word `aggressor' as a defense to an award is to bring back into the compensation law common-law defenses which have been outlawed." (276 App. Div. at pages 711-712, 97 N.Y.S.2d at page 122)
Minnesota, too, has abandoned the aggressor defense, Petro v. Martin Baking Co., 239 Minn. 307, 58 N.W.2d 731 (Sup. Ct. 1953), as has Arkansas, Johnson v. Safreed, 224 Ark. 397, 273 S.W.2d 545 (Sup. Ct. 1954). And see Rothfarb v. Camp Awanee, Inc., 116 Vt. 172, 71 A.2d 569 (Sup. Ct. 1950); Myszkowski v. Wilson & Co., Inc., 155 Neb. 714, 53 N.W.2d 203 (Sup. Ct. 1952); cf. Stulginski v. Waterbury Rolling Mills Co., 124 Conn. 355, 199 A. 653 *440 (Sup. Ct. Err. 1938) (criticizing Merkel v. T.A. Gillespie Co., Inc., 10 N.J. Misc. 1081, 162 A. 250 (Sup. Ct. 1932)). And see also the comment by Dean Roscoe Pound, 14 N.A.C.C.A.L. J. 64 (1954), where he concludes that aggression short of serious and willful misconduct ought not to bar an injured workman; and the cases and authorities collected in 15 N.A.C.C.A.L. J., pp. 39-44 (1955); Larson, op. cit., §§ 11.15(c), 11.16(a), pp. 123, 130, and Cum. Supp. (1957), pp. 17, 18.
Petitioner's slap did not amount to serious or willful misconduct (which, incidentally, under many statutes is a ground for compensation disqualification. See Larson, op. cit., § 11.15(d), p. 127). Her act was not deliberate or premeditated. It was not an aggravated, malicious assault. Nor was the quarrel a privately-motivated one, as is so often the case. See Larson, op. cit., §§ 11.21-11.23, pp. 136-145; cf. Brown v. Philmac Sportswear Co., 23 N.J. Misc. 378, 44 A.2d 805 (W.C.B. 1945); Yoshida v. Nichols, 12 N.J. Misc. 197, 170 A. 824 (Sup. Ct. 1934).
The only New Jersey cases we have found which directly hold that an aggressor may not recover compensation benefits are Merkel v. T.A. Gillespie Co., Inc., above, 10 N.J. Misc. 1081, 162 A. 250 (Sup. Ct. 1932), Lindsay v. Hoffman Beverage Co., above, 19 N.J. Misc. 356, 19 A.2d 824 (W.C.B. 1941), and Rumbolo v. Erb, 19 N.J. Misc. 311, 20 A.2d 54 (C.P. 1941). They belong to a period when a less liberal construction was given to our Workmen's Compensation Act, and we decline to follow them.
Although the dictum in Cierpial v. Ford Motor Co., above, 16 N.J. 561, 566 (1954), has had our respectful attention, we consider that the passing remark there made  not necessary to a decision of the case  has in effect been nullified by the broad and liberal language of Secor v. Penn Service Garage, above, 19 N.J. 315 (1955), which refers to the Newell, State Compensation Insurance Fund and Petro cases decided in the past decade by the respective courts of last resort of New Hampshire, California and Minnesota.
*441 We do not consider that the Legislature meant to punish a workman for a playful shove, an angry curse, or even an impulsive slap or punch, by depriving him of compensation. Where the act does not arise out of a privately motivated, purely personal feud, where it does not amount to willful misconduct or a willful intention to injure another (thereby importing premeditated and deliberate action), it is not for the court to read a new exception, covering aggressors, into the clear and unequivocal text of the Workmen's Compensation Act, R.S. 34:15-7. To do so would be to rule out negligence, contributory negligence, assumption of risk and other common law defenses pre-dating the act, in all types of compensation cases except those involving assaults. As was aptly said by Horovitz in his definitive article in 41 Ill. L. Rev. 310, above
"Many assaults result from impulsive, thoughtless or unintentional acts, often trivial in origin, although the result may be serious or even fatal. The `explosive point is merely the culmination of antecedent pressures' in many instances. A worker tells his foreman he wishes to quit the gang and that the foreman is prejudiced against him. One word leads to another, and fists fly. To create an artificial rule that he whose fist first made contact is an aggressor (and can never recover, even though the first fist did no harm, whereas the second fist permanently injured the fellow worker), is to forget the legislative command that injuries arising out of the employment be compensated, short of willful misconduct or similar provisions. And where the quarrel had its origin in the work or work-environment and was short of willful misconduct, or short of any express defense in the act, how can the court justify their own judicially-created defenses? How are they justified in bringing into the compensation act the discarded principles of the common law as to contributory fault, independent intervening cause, and the like? That these tort theories have been discarded is too well recognized for further modern argument. That there is a natural repugnancy to help a guilty party is no excuse for relieving industry of a liability and placing it on the worker or charity.
The moment courts properly admit that, for the non-aggressor, an assault, malicious or sportive, arises out of the employment, that the same assault necessarily arises out of the employment for the aggressor. It is the character and nature of the assault which determines whether it arises out of the employment not the culpability or lack of culpability or the parties involved. It is the assault itself which arises out of the employment; and who initiates the altercation has no bearing on that question, relates to common law *442 culpability considerations, and is of importance only in considering the legislative defense of willful misconduct and the like." (at pages 346-347)
The trend of authority is strongly in favor of eliminating the tort concept of the aggressor defense in workmen's compensation, and the reasons for so doing are set forth with great persuasion and logic in the cases we have cited. We consider that our Supreme Court has, in the Secor case, freshly affirmed the philosophy and scope of the Workmen's Compensation Act and pointed up its divergence from the common law tort concept.
The aggressor defense in assault cases, except in the limited number of situations to which we have referred, is out of harmony with the modern view of industrial responsibility to employees who suffer work-connected injuries. In our view there is no reason for our courts to get caught up, as have so many other jurisdictions, in the endless quest to determine the hairline difference between aggressors and non-aggressors, with all the lack of logic, inconsistency and often injustice which attend such effort. As we road our appellate cases of recent years, their clear purpose is to give the words "arising out of and in the course of" employment the broad construction which our Workmen's Compensation Act intended.
Affirmed.