59 N.J. Super. 531 (1960)
158 A.2d 210
STEPHEN PITTEL, AN INFANT, BY HIS GUARDIAN AD LITEM, MORRIS PITTEL, PETITIONER-APPELLANT,
v.
RUBIN BROS. BERGEN INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 1960.
Decided January 28, 1960.
*532 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Solomon Golat argued the cause for petitioner-appellant (Messrs. Talisman and Golat, attorneys).
Mr. Edward B. Meredith argued the cause for respondent-respondent.
PER CURIAM.
The Essex County Court affirmed a denial of workmen's compensation in an opinion by Judge Lyons to the following effect:
*533 "On this appeal the petitioner questions the Workmen's Compensation Division's dismissal of his claim for disability arising from an assault and battery committed upon him for entirely personal reasons by someone foreign to the employment.
The story of the events constituting the alleged accident was developed entirely upon the petitioner's case, the respondent having rested after the introduction of medical proofs. A fair appraisement of the testimony of the petitioner and his witness, Gary Naftalis, warrants the following determination of facts.
Petitioner, a college student, about 19 years of age, was a part-time employee in a drug store owned by respondent. Selling merchandise, making deliveries, posting advertising matter on the windows of the store and odd jobs fell within the routine of his duties. On the day in question he was mounted on a ladder, changing the window signs: removing the old signs which were held in place by masking tape and replacing them with new ones. While so engaged, his acquaintance, Naftalis, happened by. The two engaged in conversation. Subsequently, Sam Skuratofsky, petitioner's assailant, came along and he, too, stopped and stood on the sidewalk, at the ladder.
The manner of Skuratofsky's arrival on the scene and the development of events at that time and thereafter are the subjects of diverse accounts by Pittel and Naftalis.
Pittel's testimony is to the effect that Naftalis was telling him about various things that had occurred at Weequahic High School, which Naftalis attended, and that there was included in this recountal the story of a fistic encounter in which someone had been `beaten up.' Petitioner `made a few comments about the nature of the person who had committed these particular offenses.' Petitioner said that while this conversation was going on, he was facing the window, his back towards Naftalis, and that he was unaware that the subject of his remarks had `walked up in the meantime' and was standing alongside the ladder. He did not know Skuratofsky, he said, and he desisted from further remarks when he learned who he was. Skuratofsky is said to have asked whether he was a `wise guy' and `looking for trouble,' and these inquiries were followed by Sam's making certain `insinuations,' which petitioner said he ignored because he was in no mood to `start any difficulty with him.' Skuratofsky `insisted on fighting'; Pittel declined the challenge and continued working. Pittel related that he then picked up a razor blade to use in cleaning the window and that Skuratofsky thereupon `acted as if there was some sort of aggression on my part, and he knocked it out of my hand, which I ignored.' His assailant then pulled him from the ladder, punching him as he did so. Petitioner fell to the ground and was thrashed by Skuratofsky until a policeman arrived and rescued him.
Naftalis's account of events is in a different vein. He related that while he was talking to Pittel, Sam came along on his way from *534 school. Sam stopped to talk to them and was `bragging' about how he had started a fight in the hall `with some kid for no reason at all.' Pittel responded by saying something to the effect that, `You think you are big because you do something like that'; or, `you think you are pretty big because you can pick on people.' Sam then invited the petitioner to come off the ladder and fight him. Petitioner replied that he did not want to fight. Sam then pulled him from the ladder and beat him. There is no mention of a razor blade in this witness's account. And it appeared on cross-examination of petitioner that a statement made by him within a month after the alleged accident made no reference to a razor blade, but it did contain the information that Sam `knocked some masking tape out of my hand and told me to get off the ladder.'
It is patent to me that the truth of the matter is to be found in the recital of Naftalis. That version is strongly favored by probability. Pittel's account appears improbable. It is highly unlikely that on this open sidewalk Skuratofsky should have come upon the scene without notice of either petitioner or Naftalis. And, if his immediate arrival had gone unnoticed, it is not likely that his standing there would have escaped the attention of Naftalis, to say the least. Unlikely, too, is it that Naftalis would then have launched upon or continued with his account of Skuratofsky's fistic feat. He knew Sam. He also knew that Sam was in a `rotten mood' that day and that the subject of his aggressiveness was not the best channel into which to direct his conversation with Pittel.
As previously indicated, petitioner was close to 19 years of age. He was in freshman class in Rutgers University. He had previously attended Weequahic High School. Naftalis was about 16 years old. Skuratofsky's age is not known, but Pittel `assumed' that he was a freshman in the high school. The expectable happened when Sam boasted about his fighting exploit. The more mature Pittel took him to task and upbraided him for his conduct. His censorious remarks were taken most unkindly and the eruption ensued.
In resolving the issue of Pittel's credibility I have taken into account his obvious evasiveness in parrying the efforts of counsel, on cross-examination, to inquire into previous automobile accidents in which the petitioner had been involved and the injuries or claims of injury resulting therefrom.
The factual situation, as I have found it to be, does not constitute the attack a compensable accident, since it is clear that the battery did not arise out of or in the course of the employment. It occurred, not because of any condition imposed by, or duty performed in the course of, the employment, but solely because the petitioner undertook to impose upon his assailant his personal views concerning the latter's conduct. This was the source of the trouble. The employment had nothing to do with it, as either a sole or contributing cause.
The claimant argues that his right to compensation is firmly grounded on such cases as, Geltman v. Reliable Linen Supply Co., *535 128 N.J.L. 443 (E. & A. 1942); Sanders v. Jarka Corp., 1 N.J. 36 (1948); Cierpial v. Ford Motor Co., 16 N.J. 561 (1954); Giracelli v. Franklin Cleaners and Dyers, Inc., 132 N.J.L. 590 (Sup. Ct. 1945); Howard v. Harwood's Restaurant Co., 25 N.J. 72 (1957). But on the facts here found the instant case is clearly distinguishable from the cases cited. The `but for' or `positional' doctrine for which those cases [stand] does not embrace the situation where the place of employment was merely the situs for a personal set-to that had its origin entirely in the discordant natures of persons who were concerned solely with a matter that had nothing to do with the employment. The employment did not give rise to this attack, nor did it expose the petitioner to danger of attack. The situation here found falls within that category of risks described by the Howard case as `those personal to the claimant.'
In exploiting the strength of his legal position, the petitioner makes much of the fact that he was in a `trapped, or target position, "up a tree" at the top of a ladder,' and thus unable to escape the onslaught of his assailant. But this consideration falls before the basic reasoning that whatever risk existed was generated entirely by the petitioner's personal activity. That he chose an unpropitious time and position for the airing of his personal views does not change the origin of the risk. It pertains merely to the fact that he invited a greater risk or hazard than a less vulnerable position would have entailed.
The petition is dismissed. A judgment, consented to as to form, may be submitted by the respondent."
We are of the view that the judgment should be affirmed, and basically for the reasons set forth in Judge Lyons' opinion. Our views as to what is discussed in the next to the last paragraph of the opinion are more specifically stated hereinafter. We particularly agree with the factual conclusion of the county judge that the story told by the apparently disinterested witness, Naftalis, is more credible than that of the petitioner as to when the latter began his derogatory references to the assailant, Skuratofsky, and as to whether petitioner was holding a razor. These remarks were made by petitioner as a gratuitous commentary upon Skuratofsky's graceless boasts, and were intended to be heard by the latter. The consequent assault and injury were motivated purely by Skuratofsky's taking offense at what he regarded as a personal affront to him by petitioner. No circumstance related to the employment milieu had anything *536 to do with the assault  whether by way of motivation, making its accomplishment possible by lending it convenience, or otherwise causally contributing to its occurrence  circumstances variously found in the pertinent reported cases allowing recovery. When an assault on an employee is solely the product of personal animus against him by the assailant, particularly where the latter is not a fellow-employee, and there is no more connection between the assault and the employment than that it occurs while the employee is at work, recovery is not allowed. Our most recent judicial notice of this principle is found in Howard v. Harwood's Restaurant Co., 25 N.J. 72, 84, 85 (1957), and Crotty v. Driver Harris Co., 49 N.J. Super. 60, 71 (App. Div. 1958). See 1 Larson's Workmen's Compensation (1952), § 11.20, p. 136. In such a situation the risk cannot be said to be "reasonably incident" to the employment and therefore the accident does not arise out of it. Belyus v. Wilkinson, Gaddis & Co., 115 N.J.L. 43, 47 (Sup. Ct. 1935), affirmed 116 N.J.L. 92 (E. & A. 1936). This is clearly the case here.
Petitioner's attempt to relate this assault to the employment on the basis of his position on the ladder at the time it occurred is not effective because the evidence does not justify the inference that this was any factor in Skuratofsky's motivation or that the assault would have been any less likely or injurious had petitioner been merely standing on the sidewalk and made the same offending comment, under the same circumstances. The issue, of course, is not whether the comment justified the assault, but solely whether the episode as a whole was personal in nature as between assailant and victim and not otherwise employment-associated beyond the merely coincidental positional factor.
Petitioner relies upon Martin v. Snuffy's Steak House, 46 N.J. Super. 425 (App. Div. 1957). The case does not help him since there the entire altercation was between fellow-employees and grew directly out of the performance of their respective duties for the common employer.
Affirmed.