66 N.J. Super. 304 (1961)
169 A.2d 232
GIUSEPPE DE NARDIS, PETITIONER-APPELLANT,
v.
STEVENS CONSTRUCTION CO., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided March 16, 1961.
*305 Messrs. Bendit, Weinstock, Cummis & Kroner, attorneys for appellant.
Mr. Isidor Kalisch, attorney for respondent.
BARRETT, J.C.C.
This is an appeal by Giuseppe De Nardis from a judgment of dismissal by the Division of Workmen's Compensation on November 1, 1960.
In this assault case the facts are simple and were stipulated. I find them to be as follows: The aggressor, Carmen, and the petitioner were both employed by the respondent as inside construction workers. On October 14, 1959, one day before the assault, both men brought umbrellas to work with them. Upon reaching the work area the men would use a small room for the purpose of changing into their work clothes and having a place to keep their personal belongings while on the job. The room which was maintained by the respondent for the convenience of the workers was used incidentally for the storage of certain small tools, among which was a sledgehammer. At the end of that work day the petitioner, upon preparing to leave work and return home, was told by Carmen that petitioner had, not his own, but in fact Carmen's umbrella. No argument ensued, nor were there any angry exchanges between them at that time. On the following day, October 15, 1959, the petitioner and Carmen came to work together. Both men entered the room for the purpose of changing into their work clothes. Carmen had the petitioner's umbrella and wanted to show it to petitioner, who said he had no time. There was no argument at all and petitioner started to put on his work clothes. While pulling on his pants with his back towards Carmen, the latter picked up a sledgehammer and commenced to rain blows on the petitioner. When petitioner shouted "What are you doing?" Carmen stated "I am going to kill you; you stole my umbrella." Carmen was finally restrained by other workmen and the petitioner was taken to the hospital for medical treatment. The blows with the sledgehammer allegedly resulted in a cerebral concussion with unconsciousness, *306 three scars of the scalp, post concussional syndrome and traumatic anxiety psychoneurosis. I make no specific finding as to the extent and character of the injuries.
What of the law as applicable to this situation? Professor Larson in his Workmen's Compensation Law, at page 146, indicates that neutral assaults upon the claimant are those which are in essence equivalent to blind or irrational forces, such as attacks by lunatics, drunks, small children and other irresponsibles, as well as completely unexplained assaults. The majority of jurisdictions are inclined to regard the "neutral" category as non-compensable. In this State, however, those risks may be compensable. Such an example would be Gargiulo v. Gargiulo, 13 N.J. 8 (1953), an arrow shot by a boy in the direction of a tree on the property of the employer accidently struck the petitioner who was then in the course of his duties as a clerk in the employer's store on the premises. See also Howard v. Harwood's Restaurant Co., 25 N.J. 72, at page 84 (1957). Further, a growing minority of states, applying the positional or "but for" test, make awards for such neutral injuries when sustained in the course of employment.
The "but for" test connotes a standard of reasonable probability. The question is whether it is more probably true than not that the injury would have occurred during the time and place of employment, rather than elsewhere. Howard v. Harwood's Restaurant Co., supra. The theory has been adopted in this jurisdiction. Sanders v. Jarka Corporation, 1 N.J. 36 (1948); Gargiulo v. Gargiulo, supra; Howard v. Harwood's Restaurant Co., supra; Crotty v. Driver-Harris Co., 45 N.J. Super. 75 (Cty. Ct. 1957), affirmed 49 N.J. Super. 60 (App. Div. 1958).
The Howard case involved an assault where the petitioner was viciously beaten by an insane co-employee, who was motivated by the delusion that he was punishing his common law wife for wrongs she may have done him or that he thought she had done. In a per curiam opinion by the Appellate Division, 43 N.J. Super. 301, 302, the court said:
*307 "* * * it may be noted that the ordinary employer has the right of delectus personae. He selects and engages the employees; he places them for the performance of his work in the various departments or locations and he arranges the contact or association the employees have with each other during the course of the work, either expressly or as the result of the natural requirements of the operation. In the usual case, the employee has no choice as to his fellow employees or the nature or proximity of their contact with him. Such matters are regulated by the employer or by the demands of his business. Thus it may be said that a workman's fellow employees with all their idiosyncrasies and weaknesses, physical and mental, are a condition of the employment.
If an employee becomes ill while operating a machine or a delivery truck in the course of his employment and as a result loses control thereof and injures a fellow employee working alongside of him or acting as helper on the truck, can there be any doubt about the compensability of resulting injuries? If the same employee becomes sick mentally, suffers a sudden, unexplainable, insane delusion over which he has no control, and injures his fellow worker because of a compulsive impulse produced by the insanity, there would appear to be no rational basis for distinguishing between the two claims from the standpoint of compensability. Insanity is a condition which must be recognized as an incident of everyday life; it can erupt into irrational and purposeless violence at any time during the working day. An employee who is injured in the course of his work by the insane act of a fellow worker, in our judgment, clearly sustains an injury which arises out of the employment."
The Supreme Court, in its affirmance of the opinion of the Appellate Division, 25 N.J. 72, at page 86, said:
"We interpret the law of this State to be that an attack upon the person of an employee by a co-employee motivated by a delusional impulse is one which arises out of the employment within the meaning of the Workmen's Compensation Act, R.S. 34:15-7 et seq. We are further fortified by the fact that the great weight of authority throughout the country supports this position."
A logical extension of Howard came about that very same year in Crotty v. Driver-Harris Co., 45 N.J. Super. 75 (Cty. Ct. 1957). That case involved the murder of a 71-year-old stock clerk by a co-employee whose only motive was robbery of the victim. The County Court, by then County Court Judge Nimmo, drew a parallel with the Howard case with these words (at page 86):
*308 "The Howard case means that an injury during the course of employment caused by an insane act of a co-employee is to be considered as a risk incidental to the employment, and hence arising out of it. It would be intriguing if Mrs. Crotty's recovery were to be dependent upon the state of the murderer's mental imbalance. The benevolent purposes of our Workmen's Compensation Act can certainly not be subserved thereby. There could be no rational basis, from the standpoint of compensability, for distinguishing between a vicious assault resulting in near death by a co-employee deemed insane, and a vicious assault resulting in death by a co-employee deemed a murderer. The deviation from `normal' behavior denominated `insanity' has no greater right to preemption as a condition which must be recognized as an incident of everyday life, than the deviation from `normal' behavior denominated `criminality.' And that, if there is a distinction between the two. For `criminality,' just as `insanity,' `can erupt into irrational and purposeless violence at any time during the working day.' An employee who is injured in the course of his work by the anti-social, viz., criminal act of a fellow employee, clearly sustains an injury which arises out of the employment."
Judge Goldmann in the Appellate Division, 49 N.J. Super. 60 (1958), wrote, when that court affirmed Judge Nimmo's decision, that while the employment may not have been the proximate cause of the fatal assault on Crotty, it was assuredly a contributing factor which provided the murderer with the place and opportunity to assault and rob the victim. The court further noted, and significantly so, that but for the employment, the assault and death would not have occurred when it did and further that the assault was employment related in that the employment brought the employee into contact with a vicious, criminal or hot-tempered person.
The respondent urges Pittel v. Rubin Bros. Bergen, Inc., 59 N.J. Super. 531 (App. Div. 1960) as controlling. In it the petitioner was assaulted by a stranger, not a co-employee, because of personal animosity between the two. The claimant, Pittel, contended the injuries were compensable because they occurred while he was changing window signs on his employer's premises. The court reasoned that when an assault on an employee is solely the product of personal animus against him by the assailant, particularly *309 where the latter is not a fellow employee, and there is no more connection between the assault and the employment than that it occurs while the employee is at work, recovery is not allowed.
We can distinguish Pittel on the facts. It is different from the case at bar. Here we have an assault upon a worker by a co-worker driven by some irrational force, a force we cannot comprehend. The aggressor had a delusion that because his co-worker, the petitioner, had inadvertently taken his umbrella he was entitled to seek a drastic revenge. The case before us parallels the Howard case, where the aggressor had an insane delusion, and the Crotty case in which an aggressor with a criminal, as perhaps distinguished from an insane, motive murdered a fellow employee in order to rob the proceeds of his pay check. Pittel's assailant on the other hand was not unprovoked, but provoked in some degree by the petitioner. The situation just happened to occur when it did, it could have happened anywhere, it was not work connected in any way. Of course, when we decide cases we have to draw analogies from the results of other cases whose situations are most like ours and the facts here to my mind clearly parallel Howard and Crotty.
In Gargiulo v. Gargiulo, supra, 13 N.J., at page 12, Justice Wachenfeld writing for the Supreme Court said after referring to a number of cases: "Each rests upon its own facts and turns upon evidence providing or excluding the nexus between the injury and the conditions under which the work was done."
I conclude the petitioner suffered an accident arising out of and in the course of his employment. The case is remanded to the Division for the determination of the extent and duration of the injury.
An order consented to as to form may be submitted, or its terms may be settled upon notice.